John Booth GAUNT, Jr., by his next
friend Esther Gaunt, et al.,
Plaintiffs,

v.

Ted BROWN, individually, and as Secretary of State of Ohio, et al.,
Defendants.

No. 8316.

United States District Court,
S. D. Ohio, W. D.

April 6, 1972.

contest the right of a State to keep them from voting in a primary and thus having a voice in the selection of candidates for whom they may vote later. Specifically, plaintiffs attack the constitutionality of recently amended Ohio Revised Code 3513.19, effective March 23, 1972. This provides, in part, as follows:

> "At a primary election every qualified elector who is eighteen or more years of age . . . shall be entitled to vote such ballot at such primary election. . . ."

Plaintiffs claim this statute should be struck down because it does not go far enough and extend the right to vote in a primary not only to those 18 years of age or over, but to those who will be 18 years of age before the day of the next general election.

Comparison of the amendment with the way the section was prior to amendment leaves no doubt that the Legislature intended to grant the right to vote in a primary only to those who are 18 years of age at the time of the primary. This is obvious from the fact that before the amendment the right to vote in a primary was granted to those who would be 21 years of age by the time of the general election, but the Legislature made no similar grant to those who will be 18 by the time of the general election.

The problem presented by the attack on the constitutionality may seem and may even be simple. How the problem is described depends pretty much on what is in the eye of the beholder. To the plaintiffs it seems as simple as determining whether the primary is an integral part of the election. Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1949); Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). They assert that denial of the right to participate in the earlier stages of the election in which they will be qualified to vote is therefore a denial of equal protection under the Fourteenth Amend-

Richard G. Singer, Cincinnati, Ohio, for plaintiffs.

Thomas V. Martin, Executive Asst. Atty. Gen., Columbus, Ohio, Arthur M. Ney, Asst. Pros. Atty., Cincinnati, Ohio, for defendants.

Before PECK, Circuit Judge, and HOGAN and PORTER, District Judges.

## OPINION

PORTER, District Judge:

In this case 17-year-olds (who will be 18 at the time of the general election)

ment. They further state the statute is an attempt to "fence them out" (Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1964); Kramer v. Union School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969)), and the burden is therefore on the State to show a compelling state interest. And, of course, plaintiffs assert the matter must be closely scrutinized.

The State, on the other hand, views the issue as a very narrow one: whether the State of Ohio may constitutionally require a person to be 18 years of age in order to be qualified to vote.

The problem is one requiring focus on the line between state action (defendants concede "state action") which is and which is not subject to scrutiny under the Fourteenth Amendment. This case requires us to determine whether a State's fixing the minimum age for voters at 18 is subject to any judicial modification through the Fourteenth Amendment, any more than it was subject to the enforcement powers of Congress through the Fourteenth Amendment in the Voting Rights Act of 1970, invalidated in part in Oregon v. Mitchell, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970).

Thus, the case, which is one of first impression, turns on the right of a State to draw the line at 18 years of age as far as qualification to vote in a primary is concerned. Of course, the right of citizens who are 18 years of age or older to vote shall not be denied by any State on account of age under the Twenty-sixth Amendment to the United States Constitution. But do 18-year-olds, as a matter of equal protection of the laws, have the right to participate in the primary in which the candidates they may vote for are selected? In other words, can a State *deny* a soon-to-be-18-year-old the right to vote in the connected primary?

As noted at the outset, it is clear that the State intended to limit the right to vote in primaries to those 18 years of age or older. We think it equally clear that the State has the right to limit such right to vote in primaries under Article I, § 2 and Amendment X, United States Constitution.

"The existence of the power [over voting qualifications] survived the amending process, and, except as it has been limited by the Fifteenth, Nineteenth, and Twenty-fourth Amendments [and the Twenty-sixth Amendment] it still exists today." Oregon v. Mitchell, *supra*, at 202, 91 S.Ct. at 304.

See also the opinion of Mr. Justice Black, *id.*, at 125, 126, 91 S.Ct. 260.

Plaintiffs rely mainly on Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953), the most famous of the "white primary" cases. In *Terry* there was recognition that the primary is an integral part of the election. See also United States v. Classic, *supra*. The only question in *Terry* was whether the exclusion of blacks from the primary by an organization known as the Jaybird Association was "state action." In *Terry* there was rank discrimination of enfranchised voters which violated a federal statute and the Fifteenth Amendment. That is not the situation we have before us.

In the first place we do not think there is discrimination. In that connection we agree with and adopt the following statement of Professor Charles Alan Wright:

"I do not think an argument [that the denial of the vote is invidious discrimination] can be convincingly made with regard to age. Age limit on voting necessarily must be arbitrary. There is no single specific day in the life of all citizens in which it can rationally be said that they are suddenly informed members of the electorate though they were not so one day before. It is a problem in drawing lines and I think the clear meaning . . . of the Constitution is that these lines

are for the States to draw." "Legislative History of Title III of the Voting Rights Act of 1970," Vol. 8, Harv.J.Legis. 123, 130.

■ Secondly, we conclude that in setting a minimum age limit within constitutional limits a State simply exercises the power reserved to it and is immune from the impact of the Equal Protection Clause. The "fencing out" and other cases are not in point because they involved regulations of the suffrage not immune from the impact of the Equal Protection Clause. As stated by Mr. Justice Stewart in his opinion in Oregon v. Mitchell, *supra*, 400 U.S. at 294, 91 S. Ct. at 349:

"To be sure, recent decisions have established that state action regulating suffrage is not immune from the impact of the Equal Protection Clause. But we have been careful in those decisions to note the undoubted power of a State to establish a qualification for voting based on age. See, *e. g.*, Kramer v. Union School District, 395 U.S. 621, 625 [89 S.Ct. 1886, 23 L.Ed.2d 583]; Lassiter v. Northampton Election Board, 360 U.S. 45, 51 [79 S.Ct. 985, 3 L.Ed.2d 1072]. Indeed, none of the opinions filed today suggest that the States have anything but a constitutionally unimpeachable interest in establishing some age qualification as such. Yet to test the power to establish an age qualification by the 'compelling interest' standard is really to deny a State any choice at all, because no State could demonstrate a 'compelling interest' in drawing the line with respect to age at one point rather than another. . . ."

In this connection we find especially pertinent the following from the opinion of Mr. Justice Harlan in Oregon v. Mitchell, *supra*, at 152, 91 S.Ct. at 279:

"From the standpoint of this Court's decisions during an era of judicial constitutional revision in the field of the suffrage, ushered in eight years ago by Baker v. Carr, 369 U.S. 186 [82 S.Ct. 691, 7 L.Ed.2d 663] (1962), I would find it difficult not to sustain all three aspects of the Voting Rights Act amendments of 1970 . . . here challenged. From the standpoint of the bedrock of the constitutional structure of this Nation, these cases bring us to a crossroads that is marked with a formidable "Stop" sign. . . ."

Similarly, we conclude that if there is more than rhetorical support for plaintiffs' position in the recent cases, they should not be allowed to require a court to interfere with a State's reserved power to fix minimum age qualifications of voters.

■ In the consideration of the resolution regarding the Twenty-sixth Amendment in the House of Representatives Mr. Celler took note of the fact that a majority of the Court in Oregon v. Mitchell agreed that Congress "could not lower age qualifications for voters by statute under the Fourteenth Amendment." We hold that by the same token this Court cannot, through the Fourteenth Amendment, grant a request that the voting age for primaries be lowered for plaintiffs and other 17-year-olds who will be 18 by the time of the general election.

The plaintiffs recognize that:

". . . there may be some purpose and rationality in choosing the cut-off point for general eligibility on grounds of either administrative convenience or common sense that somewhere a line must be drawn . . ." (page 9 of plaintiffs' brief).

Their point is:

". . . when there is a continuous process, and the line is drawn to allow participation in some part of that process, but not other parts of that process, then the distinction must fall under the compelling state interest doctrine." *Id.*, citing Kramer v. Un-

ion School District, *supra*; Cipriano v. City of Houma, 395 U.S. 701, 89 S. Ct. 1897, 23 L.Ed.2d 647 (1969).

We disagree, even though there can be no question but that those enfranchised for the first time in between the primary and a general election only get "half a loaf" in that they have no voice in the selection of candidates for whom they are enfranchised to vote. The same will hold true of those who, in between the time of the primary and the general election, complete durational residence requirements, become new citizens, and those who are restored to citizenship.

Lastly, as far as key cases are concerned, we have not overlooked the latest pronouncement of the Supreme Court in the area of restrictions on suffrage, Dunn v. Blumstein, 405 U.S. 330, 92 S. Ct. 995, 31 L.Ed.2d 274 (1972). We consider it distinguishable for the same reason that we did Terry v. Adams, *supra*; United States v. Classic, *supra*; Bullock v. Carter, *supra*; Kramer v. Union School District, *supra*; Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L. Ed. 987 (1944); Carrington v. Rash, *supra*; Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); and the "white primary" cases.

We have considered the Voting Rights Act of 1970 and the Congressional Record on the proceedings on the resolution to adopt the Twenty-sixth Amendment, to see if Congress intended in either to include the right to participate in the candidate selection process regardless of age at the time.

■ We found the Twenty-sixth Amendment does not grant the right to vote to 18-year-olds and was not intended to. It simply bans age qualifications above 18.

"It does not grant the right to vote to all citizens 18 years of age or older. Rather it guarantees that citizens who are 18 years of age or older shall not be discriminated against on account of age." Vol. 117, Part 6, Cong.Rec. 7534.

We find it significant that in the discussion of the resolution to adopt the Amendment there is nothing to suggest an intent to assure that the right to vote in a general election included the right to vote in the preceding primary.

We found (and considered significant) that Congress in the Voting Rights Act of 1970 specifically said one had to be 18 years of age to vote in *primaries* and elections. In considering the Twenty-sixth Amendment Congress expanded this so that those 18 years of age could not be denied the right to participate fully in the nominating process, whether by signing nominating petitions, voting at party conventions, or participating in the selection of delegates. *Id.*, 7535. But we find nothing to indicate an intent to interfere with state action fixing at 18 the minimum age limit for participating in such nominating process.

In that Record we find also that the Twenty-sixth Amendment was in no way intended to "offend our federalism" (*id.*, 7534). As that implies, federalism existed prior to the Amendment and as the Supreme Court recognized:

"No function is more essential to the separate and independent existence of the States and their governments than the power to determine within the limits of the Constitution the qualifications of their own voters for state, county, and municipal offices and the nature of their own machinery for filling local public offices." Oregon v. Mitchell, *supra*, 400 U.S. at 125, 91 S. Ct. at 265.

The Amendment was proposed so the States could make their own decision whether the Nation should attempt to live with the problem of dual voting created by the Voting Rights Act of 1970 and the decision of the Supreme Court in Oregon v. Mitchell invalidating that Act in part. Vol. 117, Part 6, Cong.Rec. 7534.

Next, we turn to a consideration of plaintiffs' argument that they are being *forced* to choose between Tweedledum and Tweedledee. We deplore this argument. Some do indeed not get to participate in the candidate selection process the first time around, but they are not being *forced* to do anything, inasmuch as the "right to vote" is a privilege.

■ This is the essence of the plaintiffs' complaint, namely, that the State, in reforming its laws to bring it into line with the Twenty-sixth Amendment, has not gone far enough. That being the case we view this case as the same as or analogous to one in which persons not enfranchised assert a claim of discriminatory classification in the process of reform efforts to expand the electoral franchise to groups who would otherwise be excluded. In such cases the test of constitutionality under the Fourteenth Amendment is the more liberal "reasonableness" test. Baird v. Davoren (D. Mass.) (40 U.S.L.W. 2588, decided Feb. 17, 1972).

■ We hold to the view that in a case where a State is called on to justify its drawing the line for qualifications at 18 years of age no test is required, but, if one is required, we conclude it should be that of reasonableness, rather than the more strict test of showing a compelling state interest.

The State contends it has met both strict and liberal tests, in that setting a minimum age limit is obviously in the interest of having a minimum of maturity in voters and therefore in the interest of having an informed electorate. This overlooks the fact that, as pointed out by Chief Justice Burger in his dissent in Dunn v. Blumstein, *supra*, as a practical matter the compelling state interest test requires perfection and is an "insurmountable standard" which, as far as he was aware, no state law has ever satisfied.

Before concluding we note that no case has been found, nor have we been cited to any, which holds or even indicates that a State may not properly establish minimum age qualifications for voters. As stated by the defendant Secretary in his brief (page 4):

" . . . . Age, along with residence and citizenship, is often cited by that court [Supreme Court] as one of the obvious examples of factors which a . . . [State] may take into consideration in establishing such, qualifications. See, e. g., Lassiter vs. Northhampton Co. Bd. of Elections, 360 U. S. 45, 51 [79 S.Ct. 985, 3 L.Ed.2d 1072] (1959); Kramer vs. Union Free School District, *supra*, 395 U.S. at 62 [89 S.Ct. 1886, 23 L.Ed.2d 583]."

In *Kramer* (page 625, 89 S.Ct. 1886) the Court noted that the appellant agreed that States have the power to impose reasonable citizenship, age and residency requirements on the availability of the ballot, citing Carrington v. Rash and Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817. The issue in that case was whether *additional* requirements violated the Fourteenth Amendment.

■ This case has been submitted on stipulation. The Court has jurisdiction pursuant to 42 U.S.C. §§ 1983 and 1971 and 28 U.S.C. §§ 1343(3) and (4), 1331, 2201 and 2202. A three-judge court was properly requested under 28 U.S.C. §§ 2281–2284.

In view of our disposition of the case it is not necessary to pass on the State's motion to dismiss, nor to designate this as a plaintiff class action.

■ We agree that if plaintiffs prevail this would be an appropriate case to designate as a plaintiff class action. However, we are not persuaded that it should be designated as a defendant class action if plaintiffs prevail, inasmuch as the Secretary of State of the State of Ohio is a party-defendant, and his duties are to advise members of local boards of elections as to proper methods of conducting elections. Ohio Rev.Code

§ 3501.05(B). Also, the Secretary of State has the further duty to "compel the observance by election of officers in the several counties of the requirements of the election laws," *id.*, subparagraph (L). Since the Secretary has the duty and power over all the members whom plaintiffs would have us include in a defendant class action, the need for a defendant class action is not apparent.

Plaintiffs request that *if* the Court decided in their favor the Court order that the deadline for registering be extended one week. Since plaintiffs do not prevail, we do not reach this request.

 We have not abstained, so obviously we thought abstention inappropriate. In this connection suffice it to say we were guided by the latest pronouncement on abstention by the Court of Appeals for the Sixth Circuit, Garvin v. Rosenau, 455 F.2d 233 (1972).