507 F.2d 1079
 Garrett WOUNDED HEAD and Bernadine Nichols, Appellants,
v.
TRIBAL COUNCIL OF the OGLALA SIOUX TRIBE OF the PINE RIDGE
RESERVATION and the Solicitor of the United States
Department of Interior, Appellees.
 No. 74-1472.
 United States Court of Appeals, Eighth Circuit.
 Submitted Dec. 12, 1974.
Decided Jan. 3, 1975.
 
 Toby H. Hollander, St. Louis, Mo., for appellants.
 Patricia Schaffer, Atty., Dept. of Justice, Washington, D.C., for appellee, Solicitor.
 Dennis H. Hill, Rapid City, S.D., for appellee, Tribal Council.
 Before MATTHES, Senior Circuit Judge, and ROSS and STEPHENSON, circuit judges.
 MATTHES, Senior Circuit Judge.
 
 
 1
 Pursuant to a provision of the Indian Reorganization Act of 1934, 48 Stat. 984, specifically 25 U.S.C. 476, the Oglala Sioux Tribe of the Pine Ridge Reservation of South Dakota adopted a constitution and bylaws. Pertinent to this litigation is Article 7 of the Tribe's constitution, which provides:
 
 
 2
 Section 1. All members of the Tribe, 21 years or older who have resided on the reservation for a period of one year immediately prior to any election shall have the right to vote.
 
 
 3
 Section 2. The time, place and manner, and nomination of councilmen and any other elective officers of the Council shall be determined by the Tribal Council by an appropriate ordinance.
 
 
 4
 On October 15, 1973, a tribal election official denied Garrett Wounded Head and Bernadine Nichols, Sioux tribal members 18 and 19 years of age respectively, the right to register and vote in a tribal election because they were not yet 21 years of age. Thereupon, Garrett Wounded Head and Bernadine Nichols, as individuals and as representatives of all members of the Oglala Sioux Tribe between the ages of 18 and 21, filed a complaint in the United States District Court, requesting a declaratory judgment that the twenty-sixth amendment to the United States Constitution applied to tribal elections, and seeking a temporary and permanent order enjoining the defendants, the Tribal Council of the Oglala Sioux Tribe of the Pine Ridge Reservation and the Solicitor of the United States Department of Interior,[1] from preventing 18 to 21 year-old members of the Oglala Sioux Tribe from voting in tribal elections.
 
 
 5
 The district court allowed the suit to proceed as a class action, but denied plaintiffs' motion for a temporary restraining order and permanent injunction. On April 19, 1974, the district court granted the motion of the United States to appear as amicus curiae and also granted the defendants' motion to dismiss for the following reasons: a) the complaint failed to state a claim for relief against the Solicitor of the United States Department of Interior; b) the twenty-sixth amendment to the United States Constitution does not apply to tribal elections because such elections are internal affairs of the tribe. The plaintiffs have appealed. For the purposes of this opinion, the parties will be designated as they were in the district court.
 
 
 6
 It plainly appears from plaintiffs' complaint and trial briefs and the remainder of the original district court files, that plaintiffs premised their claim for relief in the district court on the twenty-sixth amendment to the United States Constitution.[2]
 
 
 7
 Acceptance of plaintiffs' trial theory necessarily requires equating tribal council action with action 'by the United States, or by any state.' It is authoritatively settled, however, that Indian tribes are uniquely situated within the federal system. See Talton v. Mayes, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896); United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228 (1886). In Ex Parte Crow Dog, 109 U.S. 556, at page 568, 3 S.Ct. 396, at page 404, 27 L.Ed. 1030 (1883), the Supreme Court stated:
 
 
 8
 The pledge to secure to these people, with whom the United States was contracting as a distinct political body, an orderly government, by appropriate legislation thereafter to be framed and enacted, necessarily implies, having regard to all the circumstances attending the transaction, that among the arts of civilized life, which it was the very purpose of all these arrangements to introduce and naturalize among them, was the highest and best of all, -- that of self-government, the regulation by themselves of their own domestic affairs, the maintenance of order and peace among their own members by the administration of their own laws and customs.
 
 
 9
 Speaking again to the subject, the Supreme Court observed in United States v. Kagama, supra, 118 U.S. at 381-382, 6 S.Ct. at 1113:
 
 
 10
 They (the Indians) were, and always have been, regarded as having a semiindependent position when they preserved their tribal relations; not as States, not as nations, not as possessed of the full attributes of sovereignty, but as a separate people with the power of regulating their internal and social relations, and thus far not brought under the laws of the Union, or of the State within whose limits they resided.
 
 
 11
 See Groundhog v. Keeler, 442 F.2d 674, 678 (10th Cir. 1971); Martinez v. Southern Ute Tribe, 249 F.2d 915 (10th Cir. 1957), cert. denied, 356 U.S. 960, 78 S.Ct. 998, 2 L.Ed.2d 1067 (1958).[3] Cf. United States v. White, 508 F.2d 453 (8th Cir. 1974). See also Cohen's Handbook of Federal Indian Law, Chap. 7, 1, at p. 122. It has also been stated unequivocally that Indian tribes are not to be equated with states. Barta v. Oglala Sioux Tribe, 259 F.2d 553, 556 (8th Cir. 1958), cert. denied, 358 U.S. 932, 79 S.Ct. 320, 3 L.Ed.2d 304 (1959); Iron Crow v. Oglala Sioux Tribe, 231 F.2d 89 (8th Cir. 1956).
 
 
 12
 We hold that the twenty-sixth amendment does not apply to internal tribal elections. Plaintiffs appear reconciled to this conclusion. They now admit that 'the Indians do not occupy the same position under our laws as the states.' Plaintiffs' brief at page 4. And, contrary to their position in the district court, plaintiffs have not pursued the claim that Indian tribes are in some manner arms of the federal government.
 
 
 13
 We turn now to the contentions of plaintiffs presented on appeal. In 1968, the Indian Civil Rights Act (ICRA), also known as the Indian Bill of Rights, was enacted by Congress in language taken nearly verbatim from the United States Constitution. 82 Stat. 77, 25 U.S.C. 1302, 1303. The effect of the Act was to impose upon Indian tribal governments restrictions applicable to federal and state governments, with specific exceptions: the fifteenth amendment, portions of the fifth, sixth, and seventh amendments, and in some respects the equal protection clause of the fourteenth amendment. The legislative history of the Act reflects an intent to protect the individual rights of Indians, while fostering tribal self-government and cultural identity. See 1968 U.S.Code Cong. & Admin.News, pp. 1837, 1863-1867; Note, 82 Harv.L.Rev. 1343, 1353-60 (1969); 9 Harv.J.Legis. 556 (1972). In thus creating a statute with twin, and possibly conflicting, goals, the form of government and the qualifications for voting and holding office were left to the individual tribes.
 
 
 14
 Plaintiffs advance several grounds to support their argument in favor of enfranchising all adults 18 years of age or older. The most important is that the equal protection clause of the ICRA requires the tribal council to set the minimum voting age at 18. The equal protection clause of the Act, 25 U.S.C. 1302(8) provides:
 
 
 15
 No Indian Tribes in exercising powers of self-government shall--
 
 
 16
 (8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law.
 
 
 17
 In approaching the equal protection question under the ICRA, two separate questions are presented: 1) whether the substantive meaning of the equal protection clause of the fourteenth amendment should be utilized to determine the scope of the equal protection clause of the ICRA in matters of internal tribal government; and 2) if so utilized, whether the age qualification is in fact violative of the equal protection clause of the ICRA.
 
 
 18
 We begin with the proposition that the equal protection clause of the ICRA is not coextensive with the equal protection clause of the fourteenth amendment to the United States Constitution. Groundhog v. Keeler, 442 F.2d 674 (10th Cir. 1971); Lohnes v. Cloud, 366 F.Supp. 619 (D.N.D.1973). See White Eagle v. One Feather, 478 F.2d 1311 (8th Cir. 1973). Cf. O'Neal v. Cheyenne River Sioux Tribe, 482 F.2d 1140 (8th Cir. 1973).
 
 
 19
 In discussing the legislative history of the ICRA, the Court of Appeals for the Tenth Circuit noted in Groundhog v. Keeler, supra, 442 F.2d at 682:
 
 
 20
 Such report (of the Senate Subcommittee on the Judiciary) makes it clear that Congress intended that the provisions of the Fifteenth, Amendment, certain procedural provisions of the Fifth, Sixth, and Seventh Amendments, and in some respects the equal protection requirement of the Fourteenth Amendment should not be embraced in the Indian Bill of Rights.
 
 
 21
 It is also clear from such report that Congress was concerned primarily with tribal administration of justice and imposition of tribal penalties and forfeitures, and not with the specifics of tribal structure or officeholding.
 
 
 22
 The holding in Groundhog v. Keeler and similar cases that the ICRA is not coextensive with the fourteenth amendment embodies the concept that the federal courts should not, absent explicit legislation to the contrary, interfere with the internal governmental affairs of Indian tribes. As stated in Cohen's Handbook of Federal Indian Law at p. 126:
 
 
 23
 The first element of sovereignty, and the last which may survive successive statutory limitations of Indian tribal power, is the power of the tribe to determine its own form of government. Such power includes the right to define the powers and duties of its officials, the manner of their appointment or election, the manner of their removal, the rules they are to observe in the capacity as officials and the forms and procedures which are to attest the character of acts done in the name of the tribe.
 
 
 24
 Nevertheless, plaintiffs cite this court's recent decisions in White Eagle v. One Feather, supra, and Daly v. United States, 483 F.2d 700 (8th Cir. 1973), as authority for their contention that, on the facts of this case, the equal protection clause of the ICRA should be given the same scope as the equal protection clause of the fourteenth amendment. In White Eagle and Daly, this court ruled that the equal protection clause of the ICRA required the observance in tribal elections of the one man-one vote principle established in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). The opinion in White Eagle recognized the validity of the holding in Groundhog v. Keeler that the equal protection clause of the ICRA was not coextensive with the fourteenth amendment, but then noted:
 
 
 25
 We need not explore upon this record the degree to which federal courts may assert jurisdiction over tribal elections in all circumstances. Our problem has no such complexities as tribal membership or blood lines. The tribe itself, in the case before us, has established voting procedures precisely paralleling those commonly found in our culture, if not taken verbatim therefrom . . .
 
 
 26
 Here, then, we have no problem of forcing an alien culture, with strange procedures, on this tribe.
 
 
 27
 478 F.2d at 1314. Similarly, see Daly v. United States, supra, 483 F.2d at 704-705.
 
 
 28
 We agree that it is not a significant interference with any important tribal values to require that a tribe treat equally votes cast by members of the tribe already enfranchised by the tribe itself. But we suggest that employing the ICRA to require a tribe to enfranchise a new class of the tribal population would present a real question of whether, to some extent, this court was 'forcing an alien culture . . . on this tribe.' Certainly it can be argued that, given the quasi-sovereign status of the Indian tribes, they should be permitted to determine the extent to which the franchise to vote is to be exercised in tribal elections, absent explicit Congressional legislation to the contrary.
 
 
 29
 In any case, we regard Oregon v. Mitchell, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970), as dispositive of the equal portection issue. In Oregon, the majority, writing in five separate opinions, upheld the power of the federal government to set the age for voting in national elections, but concluded that the equal protection clause of the fourteenth amendment did not limit the power otherwise inherent in the states to fix the voting age at twenty-one for state and local elections. As a direct result of this decision, the twenty-sixth amendment, which we have held above does not apply to Indian tribal elections, was adopted to remedy the obvious logistical problems that would accompany concurrent federal, state, and local elections at the same voting place with electorates of different ages able to vote in some elections but not in others. The Solicitor and the Tribe properly conclude that, in light of Oregon, to apply the equal protection clause in the instant case would restrict the tribes to an even greater extent than the states and the federal government are testricted by the fourteenth amendment. Such an incongruous result is untenable in the absence of an express congressional intent to so intervene in Indian tribal affairs. But even if the full scope of the equal protection clause of the fourteenth amendment were applied to the facts of this case, it is questionable if that constitutional provision would mandate that 18 to 21 year-old Indians be allowed to vote. See Gaunt v. Brown, 341 F.Supp. 1187 (S.D.Ohio) (three-judge court), aff'd, 409 U.S. 809, 93 S.Ct. 69, 34 L.Ed.2d 71 (1972); cf. Oregon v. Mitchell, supra.
 
 
 30
 Plaintiffs also contend that the Voting Rights Act of 1970 reflects the congressional intent to remove all barriers to voting by 18 year-olds and must necessarily apply to the ICRA. 42 U.S.C. 1973bb-1 and 1973bb-2 applies by its terms to states and political subdivisions, and provides enforcement against states and political subdivisions for violation of the Act. As previously noted, Indian tribes are not states or political subdivisions, and the legislative history of the Voting Rights Act is silent as to whether the Act was intended to affect the voting age of Indians in tribal elections. Plaintiffs' argument that Indians are included in the statute is based on the expanding concepts of due process and equal protection rather than specific language within the Act. Although ingenious, it is not persuasive. We have considered plaintiffs' argument relating to the effect of the Voting Rights Act of 1970, when construed in light of Katzenbach v. Morgan, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966). In our view this approach is but another attempt to persuade us to hold that the equal protection clause of the fourteenth amendment of the United States Constitution is embodied in the equal protection clause of the ICRA. For reasons already stated, we are not so persuaded.
 
 
 31
 As the defendants aptly note, as a policy matter, the asserted unfairness in denying the vote to 18 year-olds conflicts with the legitimate interest in maintaining tribal sovereignty. However, plaintiffs are not without a remedy, albeit not of a judicial nature. As stated in an opinion of the Solicitor the provisions restricting the franchise in tribal elections are not applicable to 'Secretarial' elections. Secretarial elections are specific federal elections regulated by federal statute[4] to which the provisions of the twenty-sixth amendment apply. Indians of majority age under the statute can sign petitions to place on the ballot an amendment to cover the tribal voting age and, given the requisite number of signatures to warrant a Secretarial election, vote for the amendment.
 
 
 32
 In summary, we hold in line with established authority that Congress has exclusive and plenary power to enact legislation with respect to the Indian tribes. In the absence of a constitutional mandate or express legislation by Congress to the contrary, a tribe has complete authority to determine questions such as the one here under consideration. Congress has failed to enact legislation authorizing members of the Sioux Tribe between the ages of eighteen and twenty-one to vote, and the ICRA does not expressly or impliedly require the Tribal Council to permit plaintiffs to vote at a tribal election. Finally, we note that the constitution of the Sioux Tribe is subject to amendment and plaintiffs have the right to participate in seeking to change the tribal constitution provision under attack.[5]
 
 
 33
 The judgment is affirmed.
 
 
 
 [1]
 Apparently, the Solicitor was joined as a defendant because he had published an opinion which modified the Sioux tribal constitutional election provision in Secretarial elections, but not in tribal elections. Solicitor's opinion No. 36840 (November 9, 1971). In the memorandum the Solicitor concluded that the twenty-sixth amendment applies only to federal and state governments. The Solicitor resolved that Secretatial elections, those called by the Secretary of the Interior under 25 U.S.C. 476 to allow an Indian tribe to amend its constitution and bylaws, are a form of federal election subject to the twenty-sixth amendment, but purely internal elections of an Indian tribe, not covered by federal laws, are not subject to the limitations of that amendment
 Plaintiffs urge that the court erred in holding the complaint failed to state a claim for relief against the Solicitor. Our affirmance on the substantive issue moots this question and we pretermit further consideration of it.
 
 
 [2]
 The twenty-sixth amendment provides:
 The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age.
 This amendment was proposed by the Ninety-Second Congress by Senate Resolution No. 7, which was approved by the Senate on March 10, 1971, and by the House of Representatives on March 23, 1971. On July 5, 1971, it was declared by the Administrator of General Services to have been ratified.
 
 
 [3]
 Martinez recognizes that the courts have consistently held that in the absence of express press legislation by Congress to the contrary, a tribe has complete authority, as a political entity, to determine all questions of its own membership. 249 F.2d at 920
 
 
 [4]
 25 C.F.R. 52.1(e), as amended, defines Adult Indian for the purposes of the section '. . . as any Indian who has attained the age of 18 years.'
 
 
 [5]
 We were informed by the representative of the Solicitor at oral argument that a number of tribes have amended their constitutions to permit all adults over the age of eighteen years to vote at tribal elections