**CHEYENNE RIVER SIOUX TRIBE,**
**Plaintiff-Appellee,**

v.

**Cecil D. ANDRUS, Secretary of the United States Department of the Interior, et al., Defendants-Appellants.**

**No. 77–1208.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1977.

Decided Dec. 16, 1977.

Rehearing and Rehearing En Banc
Denied Jan. 24, 1978.

**1086**

Margo M. McKay, Atty., Dept. of Justice, Office of Indian Rights, Washington, D. C. (argued), William F. Clayton (former U. S. Atty.), David V. Vrooman, U. S. Atty., Sioux Falls, S. D., and Drew S. Days, III, Asst. Atty. Gen., and James W. Clute, Atty., U. S. Dept. of Justice, Washington, D. C., on brief, for defendants-appellants.

Dennis H. Hill, Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, S. D., for plaintiff-appellee; James R. McCurdy, Eagle Butte, S. D., and T. Michael Carter, Rapid City, S. D., on brief.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and TALBOT SMITH,* Senior District Judge.

---

\* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. The plaintiff alleges that district court jurisdiction is conferred by 28 U.S.C. §§ 1331, 1337, 1343, 1361, and 1362. A declaratory judgment and injunctive relief are sought under 28 U.S.C. §§ 2201 and 2202.

2. The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota. The district court's opinion is reported as *Cheyenne River Sioux Tribe v. Kleppe*, 424 F.Supp. 448 (D.S.D.1977).

3. *Fisher v. District Court*, 424 U.S. 382, 387, 96 S.Ct. 943, 946, 47 L.Ed.2d 106 (1976). *See also*

TALBOT SMITH, Senior District Judge.

In the action before us the Tribe, as plaintiff, seeks declaratory and injunctive relief against the defendants, who are all officials of the Department of the Interior, Bureau of Indian Affairs.[1] The case arises from a conflict between the Tribal and federal constitutions as to the age limitation on the right to vote in an election to amend the Tribal constitution. The plaintiff insists upon the primacy of the Tribal constitution; the defendants, per contra, argue that the federal constitution controls.

The district court,[2] entertaining motions for summary judgment by both plaintiff and defendants, found that there was no genuine issue as to any material fact, and concluded that plaintiff was entitled to summary judgment as a matter of law. We reverse and remand with instructions to grant the defendants' motion for summary judgment.

The Cheyenne River Sioux Tribe is an unincorporated tribe of Indians which has accepted the provisions of the Indian Reorganization Act, 25 U.S.C. § 461, *et seq.*, (hereafter the Act). To implement the purpose of the Act to "encourage Indians to revitalize their self-government,"[3] the Act confers upon an accepting tribe various powers of self-government, including the powers to employ legal counsel, to prevent the sale of tribal property without tribal consent, and to negotiate with the federal, state and local governments.[4]

The powers granted and authorized under the Act are not without limitation.

*Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 151–152, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1972).

4. 25 U.S.C. § 476. Of at least equal importance, the Act reconfirms in an accepting tribe all of the powers which the tribe possessed by virtue of its quasi-sovereign status under previous law. 55 Interior Dec. 14, 15–30 (1934). *See also* F. Cohen, *Handbook of Federal Indian Law* 122–149 (1942). The powers of quasi-sovereignty inhere in an Indian tribe due to its unique position within the federal system. *See Wounded Head v. Tribal Council of Oglala Sioux Tribe*, 507 F.2d 1079, 1081 (8th Cir. 1975) and cases cited therein.

Despite the Act's encouragement of tribal self-government, it is beyond question that Congress possesses plenary powers of control over the unique situation of the tribes. As succinctly stated in our opinion in *Wounded Head v. Tribal Council of Oglala Sioux Tribe*, 507 F.2d 1079, 1084 (8th Cir. 1975), it is "established authority that Congress has exclusive and plenary power to enact legislation with respect to the Indian tribes." The Tenth Circuit has made a similar observation in a reference to *Simmons v. Eagle Seelatsee*, 244 F.Supp. 808 (E.D. Wash.1965), *aff'd per curiam*, 384 U.S. 209, 86 S.Ct. 1459, 16 L.Ed.2d 480 (1966):

> [I]t was well settled that Congress has plenary control over Indian tribal relations and property, and that such power continues after such Indians have become citizens * * *;
>
> [and] * * * it was early held that such plenary power of Congress included the power to regulate and determine tribal membership, and in so doing to define and describe those persons who should be treated and regarded as members of an Indian tribe * * *.

*Groundhog v. Keeler*, 442 F.2d 674, 680 (10th Cir. 1971) (citations omitted).[5]

The Act authorizes tribal organization and the adoption of a tribal constitution, but places the Secretary of Interior in a regulatory position over these processes. Two sections of the Act relate to elections on ratification and amendment of tribal constitutions, 25 U.S.C. §§ 476 and 479. They provide in relevant part, as follows:

> § 476. Any Indian tribe, or tribes, residing on the same reservation, shall have the right to organize for its common welfare, and may adopt an appropriate constitution and bylaws, which shall become effective when ratified by a majority vote of the adult members of the tribe, or of the adult Indians residing on such reservation, as the case may be, at a special election authorized and called by the Secretary of the Interior under such rules and regulations as he may prescribe. Such constitution and bylaws, when ratified as aforesaid and approved by the Secretary of the Interior, shall be revocable by an election open to the same voters and conducted in the same manner as hereinabove provided. *Amendments to the constitution and bylaws may be ratified and approved by the Secretary in the same manner as the original constitution and bylaws.* (Emphasis added.)
>
> § 479. The term "Indian" as used in sections * * * 476–478, and 479 of this title shall include all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction, and all persons who are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation, and shall further include all other persons of one-half or more Indian blood * * *. The term "tribe" wherever used in said sections shall be construed to refer to any Indian tribe, organized band, pueblo, or the Indians residing on one reservation. *The words "adult Indians" wherever used in said sections shall be construed to refer to Indians who have attained the age of twenty-one years.* (Emphasis added.)

Pursuant to his authority under 25 U.S.C. § 476 to call these so-called "Secretarial elections,"[6] the Secretary has promulgated rules and regulations,[7] the purpose of which, in part, was "to provide uniformity and order in holding elections to vote on constitutions and bylaws and *constitutional amendments*, and to facilitate the calling of such elections by the Secretary under the provisions of the Indian Reorganization

---

5. *See also,* Note, *Tribal Self-Government and the Indian Reorganization Act of 1934,* 70 *Mich.L.Rev.* 955 (1972), which observes that the Act has not granted full autonomy to the tribes. The author concludes that, "[e]ven under the final Act, the Secretary was empowered to review many actions of the tribal governments [citing 25 U.S.C. § 476, which we con-

sider, *infra* ] and still retains close control over tribal government." *Id.,* at 968.

6. 25 C.F.R. § 52.1(b) defines a "Secretarial election" as an election held within a tribe pursuant to regulations prescribed by the Secretary.

7. 25 C.F.R. § 52.1 *et seq.*

Act." [8] (Emphasis added.) Under these regulations, the Secretary's supervisory role includes authorizing the election,[9] having a representative serve as a member of a three-member election board,[10] deciding election contests,[11] and final approval of the amendment.[12]

After passage of the twenty-sixth amendment to the United States Constitution,[13] the Secretary took the position that the twenty-sixth amendment superseded the twenty-one year old voter age requirement set by 25 U.S.C. § 479.[14] The Secretary subsequently amended his regulations to permit otherwise qualified eighteen year olds to vote in Secretarial elections.[15]

Under the provisions of the Act, the Tribe had adopted a constitution. In October, 1976, the Tribal Council presented a tribal resolution to the Secretary of the Interior requesting that he call an election to amend the Tribal constitution. The amendment would restrict future membership of the Tribe to "[a]ll children of ¼ or more degree Cheyenne River Sioux Indian blood * * *."

The Secretary called the election as requested, and in November, 1976, issued a notice which stated that the election "shall be conducted in the manner prescribed under Title 25, Code of Federal Regulations, Subchapter G, Part 52," [governing Secretarial elections]. The notice also announced the following voter qualifications:

> If you are over 18 years of age or will be 18 on or before November 30, 1976, you are eligible to register to vote in elections called by the Secretary of the Interior. You are not eligible to vote if a Secretarial Election is held before your 18th birthday, even though you are registered.

The Indian Constitution, on the other hand, provides that

> All enrolled members of the Cheyenne River Tribe, 21 years of age or over, who have maintained legal residence on the reservation for a period of one year immediately prior to any election shall have the right to vote.[16]

The question presented is a narrow one, namely the proper age limitation on the right to vote in an election to amend the Tribal constitution. The district court held that the Secretary's role in the elective process did not amount to a "substantial federal involvement" and was insufficient to characterize the election as a federal election. The district court declared in substance that the Secretary's action regarding the voter age was an unwarranted intrusion upon tribal autonomy.

■ Contrary to the opinion of the district court, we agree with the statement by this Court in *Wounded Head v. Tribal Council of the Oglala Sioux Tribe, supra,* that "Secretarial elections are specific federal elections regulated by federal statute to which the provisions of the twenty-sixth amendment apply." *Id.,* at 1084 (footnote omitted). It is not merely the number or type of federal involvements which characterize these elections as federal; such a test would sweep too broadly, given the variety of the Secretary's administrative and regulatory functions in tribal affairs. Rather, it is the source of the Secretary's regulatory authority over these elections, such authority having congressional and not tribal, origin. The Congress, not the Tribe, delegates

**8.** 25 C.F.R. § 52.2.

**9.** 25 C.F.R. § 53.8.

**10.** 25 C.F.R. § 52.8.

**11.** 25 C.F.R. § 52.18.

**12.** 25 C.F.R. § 476.

**13.** Section 1 of the twenty-sixth amendment to the United States Constitution provides:

> The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age.

**14.** This view was first expressed in Op.Solic.Interior Dep't # 36840, 78 Interior Dec. 349 (1971).

**15.** *See,* 25 C.F.R. §§ 52.1(e), 52.10a(a), and 52.-11.

**16.** Article V, Elections and Nominations, Section 1.

to the Secretary the authority to call and conduct Secretarial elections, and the Congressional definition of "adult Indians" in 25 U.S.C. § 479 leaves no doubt that it intended a uniform *federal* age qualification for voters in Secretarial elections.

■ The eligible voting age of "adult members" of the Tribe, originally those "who have attained the age of twenty-one years,"[17] has, since the passage of the twenty-sixth amendment, become eighteen years. The similarity of the language of the twenty-sixth and fifteenth amendments, coupled with the long-held construction of the latter as a self-executing declaration of right,[18] lead us to construe the twenty-sixth amendment to invalidate voter age qualifications which were set higher than eighteen years. Thus, the Secretary's regulation defining an "adult Indian" as "any Indian who has attained the age of 18 years"[19] is a proper, indeed unavoidable, use of his power and authority under 25 U.S.C. §§ 476 and 479.

In view of the self-executing nature of the twenty-sixth amendment there can be no reasonable doubt that the Secretary had complete authority, indeed a mandate, to recognize the age of 18 years as the eligible voting age for adult Indians with respect to the adoption of a tribal constitution. But the Tribe would draw a distinction between the adoption of a tribal constitution and its amendment. It argues that "The language of the Indian Reorganization Act is silent as to the qualifications for voters in an election held to *amend* a tribal constitution, and

does not abrogate the Cheyenne River Sioux Tribe's right to set such qualifications in its Constitution." (Emphasis added.) The distinction asserted is not persuasive. The provision of the Indian Reorganization Act referring to the amendment of a constitution plainly states that it may be "ratified and approved by the Secretary in the same manner as the original constitution and by-laws."[20] The "same manner," in this context, refers to "a majority vote of the adult members [now 18 years of age] of the tribe * * * at a special election authorized and called by the Secretary of the Interior under such rules and regulations as he may prescribe."[21] We find nothing in the Act, nor in its legislative history, justifying a reading of the statute that would apply one eligible age to the adoption of the constitution and another to the amendment of the same article. Both actions are of equal dignity and importance.

The judgment below is reversed, and the case is remanded with instructions that the defendants' motion for summary judgment be granted.

---

17. 25 U.S.C. § 479, *supra*.

18. The Supreme Court reviewed the self-executing nature of the fifteenth amendment in *South Carolina v. Katzenbach*, 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966):

Section 1 of the Fifteenth Amendment declares that "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude." This declaration has always been treated as self-executing and has repeatedly been construed, without further legislative specification, to invalidate state voting qualifications or procedures which are discriminatory on their face or in practice.

[Citing cases.] These decisions have been rendered with full respect for the general rule, reiterated last Term in *Carrington v. Rash*, 380 U.S. 89, 91, 85 S.Ct. 775, 777, 13 L.Ed.2d 675, that States "have broad powers to determine the conditions under which the right of suffrage will be exercised." The gist of the matter is that the Fifteenth Amendment supersedes contrary exertions of state power.

*Id.*, at 325, 86 S.Ct. at 817 (citations omitted).

19. 25 C.F.R. § 52.1(e).

20. 25 U.S.C. § 476.

21. *Id.*