United States Court of Appeals

FOR THE EIGHTH CIRCUIT

———————

No. 95-3736

———————

Shakopee Mdewakanton Sioux          *
(Dakota) Community, a Federally     *
Recognized Indian Tribe,            *
                                    *
        Appellant,                  *
                                    *  Appeal from the United States
             v.                     *  District Court for the
                                    *  District of Minnesota.
Bruce Babbitt, as Secretary of      *
the Interior, and Ada E. Deer,      *
as Assistant Secretary for          *
Indian Affairs, United States       *
Department of the Interior,         *
                                    *
        Appellees.                  *

-------------------------

Louise B. Smith; Winifred S.        *
Feezor; Cecilia M. Stout;           *
Todd D. Brooks; Mary Jo             *
Gustafson; Tina A. Hove;            *
Alan M. Prescott; Cynthia L.        *
Prescott; Denise Prescott;          *
Leonard Prescott; Robert            *
Prescott, Jr.; Tanya Prescott;      *
Kimberly Amundsen; John             *
Bluestone; Brian Hester;            *
David Hester; Kaye Hester;          *
Teresa Johnson; Beverly Kosin;      *
Forest Leith; Kirk Leith;           *
Shahn Leith; Gary Prescott;         *
Jacqueline Prescott; Jerome         *
Prescott; Stacy Prescott;           *
Kathleen Rykus; Teri Schmitt;       *
Richard Scott; Robert Scott;        *
Karen Swann; and Dorothy Whipple,   *

        Amici Curiae.

———————

Submitted:  October 24, 1996

Filed:  February 27, 1997

———————

Before BOWMAN, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

The Shakopee Mdewakanton Sioux (Dakota) Community ("Community") appeals the district court's[1] refusal to declare effective certain proposed amendments to the Community's constitution. We affirm.

I.

To amend its constitution, an Indian tribe must follow the procedures set out in the Indian Reorganization Act, 25 U.S.C. §§ 461-479a-1 ("IRA"), and its associated regulations, 25 C.F.R. §§ 81.1-81.24. The tribal government must first request the Secretary of the Interior to call and conduct an election. 25 U.S.C. § 476(c)(1). At least twenty days before the election, an election board consisting of one Bureau of Indian Affairs officer and two members of the tribal government is required to post a list of registered voters, and the election board must resolve any challenges to the list's composition at least ten days before the election. 25 C.F.R. §§ 81.12, 81.13.

Although the regulations state that the election board's eligibility determinations "shall be final," 25 C.F.R. § 81.13, they also provide that "[a]ny qualified voter ... may challenge the election results by filing with the Secretary ... the grounds for the challenge," along with substantiating evidence, within three days of the posting of the election results. 25 C.F.R. § 81.22. The regulation does not enumerate permissible grounds for challenges, and the Secretary may order a new election if he or she decides that the objections are valid. Id. The regulations

_____

The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

-2-

contain no provisions for challenging the election board's resolution of eligibility disputes before the election.

The amendments voted upon will become effective only if two events occur: they must be "ratified by a majority vote of the adult members of the tribe," 25 U.S.C. § 476(a)(1), and the Secretary must approve them, 25 U.S.C. § 476(a)(2). The Secretary may review amendments that have been ratified by a majority vote only to ensure that they comply with applicable federal law. 25 U.S.C. § 476(d)(1). If they do not, the Secretary may disapprove them within forty-five days of the election. Id. If the Secretary neither disapproves nor approves them within that time, the amendments are deemed approved and become effective. 25 U.S.C. § 476(d)(2).

On April 19, 1995, the Secretary conducted an election so that the Community could vote on amendments to that portion of its constitution that sets out the qualifications for membership in the tribe. Twenty-one days before the election, the election board posted a registered voter list containing one hundred eleven names. In response to objections, the board determined that forty-four people were not eligible to vote, removed them from the list, and posted a revised list twelve days before the election. The amendments passed by a vote of thirty-five to twenty-seven, and the election board certified the results the same day as the election. Pursuant to 25 C.F.R. § 81.22, several Community members filed challenges to forty eligibility determinations, alleging that eighteen qualified members were prevented from voting and that twenty-two unqualified individuals were allowed to vote.

Forty-three days after the election, the Secretary issued a decision letter in response to these challenges, stating that he could not approve the election's results because the possible errors in the voter-eligibility determinations raised substantial doubt regarding the election's fundamental integrity and fairness.

The Secretary deferred to the election board's decision with respect to seventeen of the challenges, but ordered an administrative law judge to resolve those that remained. These challenges concerned complicated blood quantum determinations, and the Secretary had in his possession documents with conflicting information that were not reviewed by the election board. The Secretary stated that there would be a new election after the administrative law judge's resolution of those challenges.

The Community sued the Secretary for alleged violations of both the IRA and the Administrative Procedure Act, 5 U.S.C. §§ 551-559, seeking an order declaring the Secretary's actions unlawful, declaring the amendments effective, enjoining the administrative law judge's resolution of the challenges, and enjoining the second election. The district court granted summary judgment to the defendants.

## II.

On appeal, the Community contends that the district court erred in not declaring the amended constitution approved as a matter of law under 25 U.S.C. § 476(d)(2) because the Secretary neither approved it nor disapproved it within forty-five days. The Community also contends that the district court erred in holding that the Secretary had discretion to review eligibility disputes.

## A.

Although the IRA states with clarity when and why the Secretary may reject election results that have been adopted by the tribe (that is, ratified by a majority of the tribe's adult members who voted), it is silent about what the Secretary can do when it is unclear whether the results have, in fact, been ratified by a majority of the voting members. We must therefore defer to a reasonable interpretation of the statute by the Secretary. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44 (1984).

The Secretary interprets the statute to allow the rejection of election results when, as here, the Secretary is unable to determine whether an election has resulted in ratification by a majority of the voting members of the tribe as required by 25 U.S.C. § 476(a)(1). We believe that this interpretation is reasonable. Applying the statute's strict substantive and procedural limitations on the Secretary's ability to reject election results for which majority support exists to circumstances in which that support is in doubt might well force the Secretary to declare amendments effective for which majority support does not exist. Such a result would be inconsistent with the IRA's broad purpose, which charges the Secretary with supervising these elections and ensuring their fundamental integrity. The Secretary's interpretation of the limitations contained in 25 U.S.C. § 476 does not give him or her carte blanche to interfere with tribal elections; the Secretary may still disapprove elections for substantive reasons only if the proposals are contrary to federal law.

The Community's suggestion that we should be guided by that canon of statutory construction that resolves statutory ambiguities in the Indians' favor, see Bryan v. Itasca County, 426 U.S. 373, 392 (1976), does not help their case. The Community neither explains how the canon applies when Indians are on all sides of an issue, as here, nor demonstrates how ensuring that tribal election results accurately reflect the eligible voters' will is not in the Indians' favor.

The Secretary's decision letter notified the Community that substantial doubt existed regarding the election's fundamental integrity and fairness, thus making it unclear whether the amendments had, in fact, been ratified by a majority of the voting members of the tribe. Because the Secretary's reasonable interpretation of the statute renders its strict limitations on

when and why the Secretary may reject election results inapplicable in that circumstance, the district court did not err in refusing to declare the amendments approved as a matter of law.

## B.

The Community interprets the word "final" in 25 C.F.R. § 81.13 to mean "final for the Department," thus precluding any Secretarial review of the election board's eligibility determinations, and the Community contends that we must reject any other interpretation as plainly erroneous. The Community argues alternatively that any ambiguities in the regulation must be resolved in its favor.

We note at the outset that elsewhere in the same regulations, when the Secretary intends a decision to be final for the Department of the Interior, the phrase "final for the Department" often appears. See, e.g., 25 C.F.R. § 83.11(a)(2). Whether "final" also means "final for the Department" or simply "final" for purposes of conducting an election is ambiguous. Because either interpretation will therefore not contradict the regulations' plain language, we must give the Secretary's interpretation of the Department's own regulations controlling weight unless that interpretation is plainly erroneous. Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 114 S.Ct. 2381, 2386 (1994); Shalala v. St. Paul-Ramsey Medical Center, 50 F.3d 522, 528 (8th Cir. 1995).

The Secretary interprets 25 C.F.R. § 81.13 to mean that the election board's decision is final as to who casts a ballot but not as to whether the balloting amounts to a valid election by the Community's qualified voters, thus allowing the Secretary to invalidate election results under 25 C.F.R. § 81.22 due to irregularities in voter-eligibility determinations. The Secretary offers three rationales in support of this interpretation.

First, the Secretary argues that since Secretarial elections are federal elections implicating federal rights, see Cheyenne River Sioux Tribe v. Andrus, 566 F.2d 1085, 1088-89 (8th Cir. 1977), cert. denied, 439 U.S. 820 (1978), federal protection of those rights is appropriate. The regulations allow the election board to deny eligibility to a prospective voter even when that individual has had no notice of, and opportunity to respond to, the objection to his or her eligibility. Because the regulations contain no provisions for challenging the election board's resolution of eligibility disputes before the election, precluding the Secretary from ever reviewing eligibility determinations, the argument runs, would raise serious due process concerns.

The Secretary also maintains that allowing him to review eligibility determinations after the election helps ensure that governing documents accurately reflect the Community's will, in accordance with the IRA's purpose. Lastly, the Secretary notes that 25 C.F.R. § 81.22 does not limit the grounds on which he can conclude that a new election is necessary; it states that elections can be challenged on any ground for which substantiating evidence exists. The Secretary thus argues that interpreting § 81.22 to allow challenges to all procedural irregularities except voter eligibility would undermine the IRA's purpose.

We hold that the Secretary's interpretation of the interaction between § 81.13 and § 81.22 is not plainly erroneous. Although we believe that the election board's composition was a carefully constructed regulatory compromise between federal authority and tribal sovereignty, and that perhaps a more reasonable interpretation of § 81.13 would be that it precludes Secretarial review of the board's eligibility determinations, we may not substitute our interpretation for that of the Secretary. See Miller v. United States, 65 F.3d 687, 689 (8th Cir. 1995). The district court therefore did not err in holding that the Secretary had discretion to review eligibility disputes.

-7-

III.

Because the Secretary's interpretation of the IRA and its implementing regulations is reasonable, we affirm the district court's grant of summary judgment to the defendants.

HEANEY, Circuit Judge, dissenting.

Without doubt, the election process that the Shakopee Mdewakanton Sioux Community must follow to amend its constitution is a federal proceeding governed by federal statute and regulations and within the oversight authority of the Secretary of the Interior. Nonetheless, the Secretary is bound to follow the regulations he promulgated, and the plain language of section 81.13 provides that the election board's determinations of voter eligibility "shall be final." This finality rule recognizes that determining tribal membership is the very essence of sovereignty and such decisions should be made according to tribal law by a body with at least a majority Indian vote. The Secretary's interpretation of the rule--that the Department's duty to resolve challenges to election results includes revisiting questions of voter eligibility previously decided by the election board--is plainly erroneous and inconsistent with the language of the regulations. See Shalala v. St. Paul-Ramsey Med. Ctr., 50 F.3d 522, 529 (8th Cir. 1995) (declining to defer to Secretary's interpretation that read additional unwritten terms into an otherwise unambiguous rule). Moreover, the agency's interpretation has the effect of indefinitely postponing the election to amend the Community's constitution which contravenes Congress' expressed intent that Secretarial elections proceed within the strict time lines set forth in 25 U.S.C. § 476. Therefore, I dissent from the majority view that the agency interpretation of its regulations is reasonable.

In the Indian Reorganization Act of 1934 (IRA), Congress explicitly acknowledged Indian tribes' right to organize and to adopt or amend their own constitutions, 25 U.S.C. § 476(a), and instructed the Secretary of the Interior to call and conduct federal elections for this purpose, 25 U.S.C. § 476(c). Congress amended the IRA in 1988 adopting strict time lines to ensure that such elections proceed without undue delay: The Secretary must hold an election to ratify an amendment to a tribe's constitution and bylaws within ninety days after receipt of a tribal request for an election. 25 U.S.C. § 476(c)(1)(B). Moreover, if a Secretarial election results in the adoption of a constitutional amendment, the Secretary must act within forty-five days of the election to either approve the amendment or make a finding that the amendment is contrary to applicable laws. 25 U.S.C. § 476(d)(1). If the Secretary fails to act on a proposed amendment within the forty-five-day period, the statutory scheme deems the Secretary's approval as given. 25 U.S.C. § 476(d)(2). As the Assistant Secretary acknowledges in this case, "the need to get the issue before the voters in a timely manner has become a congressional mandate." (Appellee's Supp. App. at 35 (Letter from Ada Deer, Assistant Secretary-Indian Affairs, to Denise Homer, Director of the Minneapolis Area Office of the Bureau of Indian Affairs of 6/2/95 at 2).)

Congress delegated to the Secretary authority to prescribe rules and regulations to govern tribal-reorganization elections under the IRA. Pursuant to that authority, the Secretary promulgated the regulations at issue in this case. The regulations establish an election board--consisting of one BIA representative (acting as chair) and two tribal representatives-- which is charged with ensuring that an election is conducted in compliance with the procedures set forth in the regulations. 25 C.F.R. § 81.8(a). The election board must oversee voter

registration, including notifying eligible voters of the need to register, 25 C.F.R. § 81.11(a), and posting an official list of registered voters at least twenty days prior to the election, 25 C.F.R. § 81.12.  In addition, the regulations charge the election board with resolving eligibility disputes in the following manner:

> The election board shall determine the eligibility of any written claim to vote presented to it by one whose name does not appear on the official list of registered voters as well as any written complaint of the right to vote of anyone whose name is on the list.  <u>Its decision shall be final.</u>  It shall rule on all claims no later than ten days before the election.  Any claim not presented at least ten days before the election shall be disallowed.

25 C.F.R. § 81.13 (emphasis added).  The regulations further provide that after the election, qualified voters[2] can contest election results with the Secretary:

> Any qualified voter, within three days following the posting of the results of an election, may challenge the election results by filing with the Secretary . . . the grounds for the challenge, <u>together with substantiating evidence</u>.  If in the opinion of the Secretary, the objections are valid and warrant a recount or new election, the Secretary shall order a recount or new election.  The results of the recount or new election shall be final.

25 C.F.R. § 81.22 (emphasis original).

_____

[2] It appears that a qualified voter is any person who had been registered to vote in the election.  Although the regulations do not explicitly define the term, they define "registration" as "the act whereby persons, who are eligible to vote, become entitled or <u>qualified</u> to cast ballots by having their names placed on the list of persons who will be permitted to vote."  25 C.F.R. § 81.1(o) (emphasis added).  Thus, although this regulation does not permit the Secretary to hear a challenge brought by a person who was not registered to vote, nothing in the language explicitly prevents a registered voter from bringing a challenge to the overall composition of the voter registration list.

II.

In this case, the Community leadership initiated the process to amend the Community's constitutional membership requirements in 1994. The Constitutional Amendment Committee of the General Council drafted proposed amendments and, on June 10, 1994, the General Council submitted a formal request for a secretarial election pursuant to section 476. Due to concerns over the proposed amendments, the Secretary did not call for or hold an election within the ninety days mandated by the IRA. After negotiating with the Secretary, however, the Community modified its proposed amendments and, on February 17, 1995, the Secretary authorized the Minneapolis Area Director of the BIA to conduct the election.

In accordance with the regulations, the BIA and the Community established an election board consisting of a BIA representative acting as chair and two tribal representatives. On March 8, 1995, the Community provided the BIA with a list of 116 persons it recognized as enrolled members of the Community. From that, a list of registered voters containing 111 names (minors and non-residents from the previous list were excluded) was posted on March 29, 1995. The regulatory deadline for filing challenges to the registered voter list with the election board was noon on April 6, 1995, by which time challenges had been filed to more than 50% of the names on the registered voter list. The election board met on April 6 and 7, 1995 and ruled on the challenges to voter eligibility. With one exception, the election board resolved every challenge by unanimous decision. The board posted a revised list containing the names of sixty-seven eligible voters on April 7, 1995.[3]

---

The initial list of enrolled members contained the names of all persons enrolled in the Community whose membership is recognized by the tribal leadership regardless of his or her technical eligibility under the 1969 constitution. In contrast, the revised list of eligible voters included only those persons who

An election was held on April 19, 1995 in which those persons on the voter registration list of April 7, 1995 were permitted to vote. The proposed constitutional amendment passed by a vote of thirty-five to twenty-seven. The election results were certified by the election board on the day of the election. Shortly after the certification of the election results, two groups of Community members filed challenges with the Secretary concerning the election board's voter-eligibility determinations. Taken together, the challenges alleged that twenty-two persons voted who should not have been allowed to vote and that eighteen persons who were found ineligible should have been permitted to vote.

Forty-three days after certification (and two days before the constitutional amendment would have been deemed effective by operation of law) the Secretary announced that he could not approve the election results due to irregularities in the determination of voter eligibility. The Department's procedure to redetermine voter eligibility is set out in a letter by the Assistant Secretary in which she calls for the appointment of an ALJ to determine the blood quantum of twenty-three challenged individuals. The Assistant Secretary will review the ALJ's determinations and render a final decision for the Department. According to the Assistant Secretary's letter, the date of a new election to amend the Community's Constitution will be not less than thirty nor more than sixty days after she approves the administrative determinations. In other words, the secretarial election has been indefinitely suspended by the Department.

_____

were constitutionally eligible to vote, as dictated by federal law. Although the Community's position was that all persons recognized by the General Council as members should be eligible to vote in the secretarial election, the Community representatives on the election board deferred to the BIA position that eligibility determinations had to be made in accordance with the membership requirements as they were set out in Article 2 of the Shakopee Mdewakanton Constitution. (See Appellant's App. at 129 (transcript of election board proceedings at 36:9-18).)

The plain language of the regulations unambiguously gives the election board the authority to resolve voter eligibility disputes and makes its determinations final. The Secretary, therefore, is bound to recognize the election board's determinations as final, particularly absent some claim that the board acted outside its authority. As written, the regulations give deference to what is an already watered-down notion of Indian sovereignty in that it gives tribal members a majority voice in the all-important membership determinations. Moreover, it recognizes the congressional mandate to move the election process forward without unnecessary delay.

Although the Department asks us to find ambiguity, the regulations clearly set out that the election board's determinations of voter eligibility are final. It is therefore apparent that the Secretary's duty to resolve challenges by qualified voters does not carry with it the authority to revisit the election board's final determinations of voter eligibility. The Secretary interprets the word final in section 81.13 to mean final for the election board so that an election can proceed, but not final for the Department. This reading is nonsensical and runs counter to the balance carefully struck by Congress. The Secretary simply does not get two bites of the apple. He cannot delegate a specific responsibility to the election board, make the board's decision final, and then revisit the issue due to dissatisfaction in the outcome.

Perhaps the most troubling aspect of this case is the practical result of the Secretary's decision. The election process initiated by the Community in 1994 is no closer today than when it began. The Community faces a most unfortunate Catch-22: The only process by which it can modify its membership requirements to the satisfaction of the United States is a secretarial election which

is now indefinitely postponed until the Secretary determines the Community's membership to his satisfaction.  I cannot join in the majority's conclusion that such a result is reasonable.

A true copy.

Attest:


    CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT