**CHEYENNE RIVER SIOUX TRIBE**

v.

**Thomas S. KLEPPE, etc., et al.**

No. Civ76–3062.

United States District Court,
D. South Dakota.

Jan. 4, 1977.

James R. McCurdy, Eagle Butte, S. D., for plaintiff.

Brian Hagg, Asst. U. S. Atty., Rapid City, S. D., for defendants.

MEMORANDUM OPINION

BOGUE, District Judge.

Plaintiff in this action seeks declaratory and injunctive relief against Defendants, who are all officials of the Department of Interior, Bureau of Indian Affairs.

The Secretary of the Interior has called a special election for the purpose of amending the constitution and bylaws of the Chey-

enne River Sioux Tribe. The proposed amendment would require that a person be of at least one-fourth Cheyenne River Sioux Indian blood to be enrolled as a member of the Tribe. The Tribe's Constitution requires that only enrolled members who have attained the age of twenty-one may vote in tribal elections. Art. V § 1. Despite this requirement in the Tribe's Constitution, the Secretary intends to extend the vote in the special election on the proposed constitutional amendment to eighteen year old Tribal members. In so doing, he is acting pursuant to 25 C.F.R. §§ 52.1(e); 52.6(a)(1); 52.10a(a); 52.11. *Cf. Wounded Head v. Tribal Council of the Oglala Sioux Tribe*, 507 F.2d 1079 (8th Cir. 1975).

The election in question had been scheduled for November 30, 1976. On November 22, 1976, this Court, after informal notice and hearing, entered an Order temporarily restraining the scheduled election. At the November 22, 1976 hearing, counsel for the Defendants indicated that the factual allegations in the Complaint were not disputed, and that he had no objection to submitting the matter on briefs. Subsequently, the Defendants filed a Motion to Dismiss, which has been denied except insofar as it sought dismissal of the claims against the Defendants in their individual, as opposed to official, capacities. Plaintiff has clarified the procedural posture of the case by filing a Motion for Summary Judgment. This Court has carefully considered the entire file, as well as defense counsel's statement made November 22, 1976 that the factual allegations are not disputed, and has determined that there is no genuine issue as to any material fact. This Court concludes that Plaintiff is entitled to summary judgment as a matter of law.

The Cheyenne River Sioux Tribe is an unincorporated tribe of Indians which has accepted the provisions of the Act of June 18, 1934. 25 U.S.C. §§ 461 *et seq.* Under that Act and the Tribe's Constitution, the Secretary of the Interior is required, upon request of the Tribal Council supported by petitions signed by Tribal members, to call special elections for the purpose of submitting proposed amendments to the Tribal Constitution to the Tribal electorate. 25 U.S.C. § 476; Constitution of the Cheyenne River Sioux Tribe, Art. IX. Under Part 52 of 25 C.F.R., the Secretary is to both call and supervise these elections. His supervisory duties include: (1) having a representative serve as one member of a three-member election board (the other two members are to be governing officers of the Tribe), 25 C.F.R. § 52.8; (2) considering and determining election contests, 25 C.F.R. § 52.18; and (3) giving final approval to any amendments, 25 U.S.C. § 476.

Following the adoption of the twenty-sixth amendment to the United States Constitution, the Secretary promulgated regulations requiring that eighteen year olds be allowed to vote in elections of this nature. *E. g.* 25 C.F.R. § 52.10a. Basically, then, the Secretary's position is that "Secretarial elections," or elections called by him for the purpose of submitting proposed amendments to Tribal constitutions, are "federal" in nature and thus subject to the twenty-sixth amendment. It may be noted at this point that the Secretary draws a distinction between "Tribal" elections (*e. g.* for the election of Tribal officials) and "Secretarial" elections (for the submission of proposed constitutional amendments) for purposes of determining the applicability of the twenty-sixth amendment. *See Wounded Head v. Tribal Council of the Oglala Sioux Tribe*, 507 F.2d 1079, 1080 n. 1 (8th Cir. 1975).

The twenty-sixth amendment to the United States Constitution provides:

The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age.

The twenty-sixth amendment does not, by its terms, apply to Tribal governments. Accordingly, eighteen year olds enjoy no constitutional right to vote in what has been called "internal tribal elections." *Wounded Head, supra.*

The only reported case relevant to the issue presented here is *Wounded Head, supra*, wherein the Eighth Circuit Court of

Appeals held that the twenty-sixth amendment is not applicable to tribal elections. While the issue of whether the twenty-sixth amendment is applicable to "Secretarial" elections was not before it for decision, the *Wounded Head* Court considered the question in the following dictum:

> As stated in an opinion of the Solicitor [of the United States Department of the Interior] the provisions restricting the franchise in tribal elections are not applicable to "Secretarial" elections. Secretarial elections are specific federal elections regulated by federal statute to which the provisions of the twenty-sixth amendment apply. 507 F.2d at 1084.

Thus, the Secretary's position in this lawsuit is not without support. However, it must be noted that the particular issue here was not squarely presented in *Wounded Head*. This Court concludes, for reasons that follow, that the supposed distinction between "Tribal" and "Secretarial" elections is without merit.

As noted above, the Cheyenne River Sioux Tribe is organized under the Act of June 18, 1934, popularly known as the Indian Reorganization Act. The specific purpose of the Indian Reorganization Act was to foster and encourage self-government by the various Indian tribes. *Fisher v. District Court of Sixteenth Judicial District of Montana*, 424 U.S. 382, 96 S.Ct. 943, 946, 47 L.Ed.2d 106 (1976). *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 151, 93 S.Ct. 1267, 1271, 36 L.Ed.2d 114 (1973). It seems clear to this Court that the process of creating and amending a constitution is basic to the concept of self-government. This is particularly true in the instant case, since the proposed constitutional amendment to be submitted at the special election deals with blood quantum requirements for Tribal membership, an area traditionally reserved for Tribal self-government. *See Daly v. United States*, 483 F.2d 700, 706 (8th Cir. 1973).

The Secretary urges that a "Secretarial" election is a "federal" election and thus subject to the twenty-sixth amendment because of substantial federal involvement under 52 C.F.R. Part 52. Thus he would have the Court merely add up the indicia of federal involvement to determine whether the twenty-sixth amendment applies. Because of the presence of federal officials on Indian reservations, it would seem that any Tribal election is, to some extent, subject to federal supervision. For example, a federal official is to administer the oath of office to each newly elected tribal official, under Article III, Section 6 of the Constitution of the Cheyenne River Sioux Tribe. It should also be noted that the Secretary of the Interior has the power to review many of the ordinances and resolutions of the Cheyenne River Sioux Tribal Council. Const. Art. IV S.2. Yet it cannot be seriously contended that this federal review power, in and of itself, removes such ordinances and resolutions from the protected domain of internal tribal affairs. In the opinion of this Court, the test urged by the Secretary, and accepted in the *Wounded Head* dictum discussed above, is too mechanistic. Its application pays insufficient attention to what Felix Cohen has described as follows:

> The first element of sovereignty, and the last which may survive successive statutory limitations of Indian tribal power, is the power of the tribe to determine its own form of government. Cohen, Handbook of Federal Indian Law 126.

This power of self-government is meaningless unless the Tribe has the power to make decisions basic to the formation and amendment of its Constitution. Certainly a Tribe should be free to implement its views concerning voting age, since it should be free to choose to continue to respect age over youth in its governmental processes. In the absence of more explicit federal legislation [1] than what is presented here, this Court is

---

1. Indeed, applicable federal legislation still sets the voting age at twenty-one for "Secretarial" elections. Adoption and amendment of Tribal Constitutions is to be accomplished by a vote of "adult Indians," 25 U.S.C. § 476, which are defined as Indians twenty-one or older. 25 U.S.C. § 479.

unwilling to force the ideas of white America regarding voting age upon an Indian Tribe which hopefully continues to possess some attributes of sovereignty. The federal government's trust responsibility is not to be broadly used as an administrative tool to overcome the policy of Indian self-determination.

Unfortunately, both the result and the approach used in this case appear to be somewhat novel. It seems to this Court that, at the administrative level, the recurrent clashes between the trust responsibility and the policy of self-determination are resolved in a manner detrimental to tribal self-government. All too often, Courts seem to pay little more than lip service to the right and power of Indian peoples to govern themselves. It must be remembered that this right and power is subject to diminution only by express Congressional enactment, not administrative rule-making which under the guise of the trust responsibility seeks to erode what vestiges of Indian sovereignty remain.

The result of this case appears novel because it contradicts the *Wounded Head* dictum. This Court is convinced, however, that now that the specific issue regarding the application of the twenty-sixth amendment to Tribal Constitutional elections has been squarely presented, the need for Tribal autonomy requires the result reached here. Indian tribes must be free to be inventive, and increasing federal intervention which is unauthorized by explicit legislation can only quell this inventiveness.

It is no secret that there is great dissatisfaction among the various tribes in the State with the functioning of the Department of Interior through the Bureau of Indian Affairs pertaining to tribal matters. Whether the non-Indian communities would or should act in a similar fashion is simply irrelevant. We cannot—we must not— smother the tribal government in its efforts to retain control of tribal matters.

In summary, since the twenty-sixth amendment does not by its terms apply to tribal elections, since there is no explicit Congressional legislation requiring an eigh-teen-year old vote, and since the need for tribal autonomy requires that the Secretary's mechanistic test of federal supervision be rejected, Plaintiff's Motion for Summary Judgment will be granted.

The foregoing shall constitute this Court's findings of fact and conclusions of law.