**Bessie CRAIG, Executrix of the Estate of Clarence W. Craig, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV75-1004.**

United States District Court, D. South Dakota, N. D.

June 14, 1978.

---

Kennith L. Gosch and Harry N. Sandstrom of Bantz & Gosch, Aberdeen, S. D., for plaintiff.

Jeffrey D. Snow, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This case involves plaintiff's attempt to recover from the Internal Revenue Service a deficiency in the amount of $40,206.67 plus interest which plaintiff paid while reserving the right to institute this action.

Plaintiff, Bessie Craig, was appointed Executrix of the estate of her husband, Clarence Craig, who died as the result of an automobile accident on November 22, 1968. His gross estate was listed as being $329,-962.53 and his taxable estate was computed as being $135,010.95. His estate tax was reported at $29,515.11 and this was paid with the return.

The alleged deficiency arose as a result of the claim by the Internal Revenue Service that 100 percent of the Schedule F property (personal property) involved in the farming operation was a part of Clarence Craig's estate. Plaintiff contends that only 50 percent of that property should be included in her husband's estate because there existed a family partnership with respect to the farming operation and that, therefore, half of the personal property belonged to the plaintiff.

This action to recover the paid alleged deficiency plus interest and costs of litigation was filed in this court on February 10, 1975. The Court conducted the trial of this case on November 10, 1977. Subsequent to that court trial both sides submitted written briefs.

Clarence and Bessie Craig were married on October 25, 1925. At that time Clarence was 27 years old and Bessie was 22. This marriage continued until Clarence's death in 1968, a period of some 43 years. During this period of time, Clarence and Bessie Craig not only brought forth and raised a family of five children but also built a sizable farming operation in northeastern South Dakota. They built this profitable operation from scratch as neither Clarence nor Bessie owned any farmland at the time of the marriage. Clarence did have a small bank account at the time of their marriage and he also owned a little farm machinery and a few cows.

At the time of their marriage, Clarence was working on his parents' farm and was in partnership with his brother in a small farming enterprise. Again, however, this pre-marriage farm operation conducted by Clarence involved the ownership of no property and utilized little farm machinery. The successful farm operation and the concomitant acquisition of agricultural land developed following the marriage of Clarence and Bessie Craig. The first real property purchased by the Craigs was not acquired until five years after their marriage.

All of the land owned by the Craigs was acquired subsequent to the marriage. With the exception of a small portion of land obtained through Clarence's inheritance, all of the land purchased by the Craigs was financed through loans, principally from the Federal Land Bank. Downpayments and the satisfaction of loan obligations were made possible from income derived from the land. Altogether, 3½ quarters of cultivated land were purchased in the name of Clarence Craig. Another 7 quarters were purchased as joint tenants and 2 quarters were purchased in Bessie's name. In addition, certain pasture land, The Elm River Property, was purchased as joint tenants. Ownership of various parcels of this property was changed in 1951, 1956 and 1958. After the 1958 land transfers, the property division was such that Bessie owned 5 quarters of land and Clarence owned 5½ quarters. This division of land remained the same up to the time of Clarence's death.

Another 2 quarters of cultivated land were acquired in 1965 in the name of Bessie Craig. Totally, therefore, at the time of the death of Clarence, Bessie owned 7 quarters of farmland, Clarence owned 5½ quarters of farmland and the Elm River pasture land was held in joint tenancy. The Internal Revenue Service did not dispute this division and made no attempt to include the land owned by Bessie Craig in the taxable estate of Clarence.

The IRS does dispute the exclusion of certain personal property from Clarence's estate. This property consists largely of grain, livestock and machinery and, with the possible exception of a minor portion of antiquated machinery, was all acquired by the Craigs during the tenure of their marriage. Plaintiff's contention that the excluded property is rightfully the property of Bessie Craig and not Clarence Craig and, therefore, should properly be excluded from the estate of Clarence Craig is the basis of the controversy before this Court. Plaintiff raised the similar contention, that one-half the personal property at issue rightfully was Bessie's property, in filing her state inheritance tax return. This contention was accepted by the state department of revenue.

The Craig farming operation consists principally of raising grain along with a hog and cattle feeding operation. Sheep, chickens and horses were also raised on the farm. Most of the cattle were purchased at area sales and were raised on the farm, in part, from grain grown on the land. Bessie generally accompanied her husband on the buying trips to procure cattle. Moreover, it was usually her function to arrange for the shipping of the cattle back to the farm.

The entire operation was run out of a single checking account in the names of both Bessie and Clarence Craig at the First National Bank of Aberdeen, Groton Branch. All income received by the Craigs during their 43 years of marriage that was deposited in a bank was deposited in this single account. All purchases and payments made by check were made from this account. Deposits to and checks drawn on this account were often handled by Bessie Craig. Such was the case because she was the spouse in charge of the bookkeeping aspects of the farm operation. Also, she had the responsibility of writing the payroll checks and the maintenance of other business records. She also assisted in the preparation of the tax returns.

Grain raised on the Craig land was either used as feed in their cattle operation or was sold. No records were kept showing the amount of grain obtained from the land owned by Bessie as distinguished from the land in Clarence's name. It must be remembered, however, that from 1958 to 1965 Bessie owned approximately half of the cultivated land and that subsequent to 1965 she owned more than half. This is of even greater significance when it is considered that grain sales for the Craig operation in the years 1956 through 1968 amounted to over $325,000. This does not even consider the grain used in the Craig hog and cattle feeding operation. In any event, considering the respective division of land ownership, it appears indisputable that Bessie Craig made a very significant capital contribution to the operation; a contribution

that, in comparison, rivals that of her husband, Clarence Craig.

Personal property sought to be excluded here represents the acquisitions of the Craigs together during the course of their 43 year marriage. These acquisitions were the direct result of income derived from the Craigs farming operation; an operation in which, for a significant period of time, approximately half of the cultivated land was owned by the plaintiff, Bessie Craig. Not only did the income derived from the land owned by Bessie Craig contribute significantly to the development and growth of the Craig farming operation, but her individual labors represented a vital contribution to the operation as well.

In addition to shouldering a mother's share of the responsibility for raising a seven-member family, Bessie Craig contributed control and management, as well as other vital services toward the success of the family farm. Contrary to common practice in the farming community, Bessie Craig took an active role in providing the necessities and comforts of life for the hired help. She cooked all their meals, cleaned their sleeping rooms, and washed and patched their clothing. This extra non-monetary compensation probably provided an important asset in obtaining quality farm help. In addition, like all major decisions in the farm operation such as matters of land and machinery purchases, Bessie had an equal voice with Clarence in the selection of hired help.

Bessie was in total control of the egg marketing aspect of their chicken operation. For several years, this included her maintenance of a butter and egg route. In this regard, plaintiff put all the money made on their egg sales into the single checking account so that it could be used in the general farm operation. Altogether, Bessie deposited $19,886.23 in the account over a period of time spanning the years 1945 to 1963 from money made in the egg operation.

Plaintiff also raised a large garden. The vegetables raised in that garden formed part of the food stock for the Craig family and the hired men. Vegetables not eaten in the summer were canned by Bessie for winter consumption. She also canned meat.

■ Besides these duties and her contributions mentioned earlier, Bessie helped integrally in the harvest. This help included hauling grain from the fields to surrounding towns. She also, on occasion, hauled cattle to pasture and made frequent trips to surrounding towns to obtain repair parts for the farm machinery. All in all, the efforts of Bessie Craig in the operation of the family farm, as well as her capital contributions in terms of income derived from her land, can properly be characterized as those of a partner, in the fullest business sense of the word.

Internal Revenue Code Section 2033 provides that: "the value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death."

This means that if there indeed existed a family farming partnership between Bessie and Clarence Craig at the time of Clarence's death, the IRS was in error to include the value of all the personal property in the taxable estate of Clarence Craig. After a careful consideration of the evidence presented to this court, I am convinced that Bessie and Clarence Craig did in fact pool their capital and labors with the intent to conduct a family partnership in the operation and growth of the family farm. Accordingly, plaintiff is entitled to the refund sought.

■ The critical issue for the court's determination in this case seeking a refund in taxes paid on the basis of a family partnership was noted by the United States Supreme Court in *Commissioner v. Culbertson*, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659 (1949). There the court noted, at 742, 69 S.Ct. at 1214 that the determinative question is not whether the capital or services contributed by a partner are of a certain quality to meet some objective standard but rather whether "the parties in good faith and acting with a business purpose intended to join together in the present conduct of

the enterprise." That decision went on to note that a party's participation in control and management of the business is an important indicia of an intent to be a bona fide partner.

The evidence presented in this controversy convinces me that Bessie and Clarence Craig, in good faith, did intend to join their income and labors as equal partners in the establishment and growth of the family farm.

Reflective of that intent are the separate wills executed by Bessie and Clarence Craig in 1958. Those documents reveal that the Craigs, at that time, recognized that their personal property, the fruits of the labors of these two partners, was owned in common. Both wills contained the following statement: "if at my death we own personal property in common ownership (*as we do at this time*) I expressly authorize him (Executor) to divide all items of personal property that are divisible including cattle." (emphasis added.)

More importantly, however, in the establishment of the Craigs' intent to form a partnership is the evidence of the capital contributions of the parties, of the division of labor and arduous contributions of both parties in the operation of the farm, and the fact that all major decisions of the business were decided on the basis of equal participation by both Bessie and Clarence Craig. All this evidence leads to the conclusion that the Craigs intended to, and, in fact, did operate their farm as equal partners.

A similar conclusion as that reached by this Court is found in *United States v. Neel*, 235 F.2d 395 (10th Cir. 1956). Following the authority established in *Culbertson, supra*, the Tenth Circuit Court of Appeals, in a similar fact situation as presented here, found for the plaintiff and held that a family partnership between husband and wife did exist. In doing so, the Court noted, at 400:

> In determining whether a husband and wife were bona fide business partners with respect to tax liability, the absence of a formal agreement and the failure to

set up books as partners is not conclusive. Neither is it essential that written articles of partnership be prepared and executed. A partnership agreement may be oral and may result from the acts and conduct of the parties clearly manifesting an intention to engage in a bona fide business partnership.

.    .    .    .    .

Here, immediately after their marriage, Alfred and Olive pooled their cash and other property. Thereafter, each made substantial contributions of labor and services to their joint undertakings in farming, business, and the practice of law. On occasions they engaged in separate activities, but always the earnings from such separate activities were placed in their joint bank accounts. Each exercised authority, control, and management over the various business endeavors in which they jointly engaged. Each contributed substantial vital services in carrying on their joint undertakings. Moneys that came to each of them through inheritance were placed in the joint bank accounts. Each had authority and in fact did draw checks on their several bank accounts.

I am convinced that the conclusion reached by the Court in *Neel, supra*, is warranted by the facts in this case. To hold otherwise would require this Court to ignore the reality of the wife's contribution to the family farm in this situation. To hold for the defendant here would also thwart the obvious intent of the Craigs, which was to operate the farm in partnership with each one contributing equally in the work, and its control and management. The facts indicate that it was also agreed that the hard-earned rewards of that labor would be reinvested into the business rather than be kept by each spouse for his or her personal economic choices. Indicative of this is the fact that the households goods were valued at $400 on the estate tax return. Certainly Bessie Craig's indisputable hard work throughout the years was not directed toward her personal obtainment of a beautiful and well-furnished home. This

Court will not ignore this farm wife's contribution to the success of the business as the Internal Revenue Service seeks to do.

The facts clearly indicate that Clarence and Bessie Craig intended to and did operate their farm as equal partners throughout their 43 years of marriage. The success they enjoyed in this endeavor was because of their joint efforts.

It is therefore the opinion of this Court that half of the personal property listed in Schedule F of the estate tax return of Clarence Craig was rightfully the property of Bessie Craig and that she, therefore, is entitled to a refund to that extent, with interest. Her prayer for attorney fees and costs is, however, denied as this Court does not view 42 U.S.C. 1988 to permit the award of such fees in this case.

The above decision shall constitute this Court's findings of fact and conclusions of law. Counsel for plaintiff is directed to compute, after consultation with counsel for IRS, the amount of the award and to prepare an appropriate order and judgment in accordance with the decision.