**Marie DUCHENEAUX, Plaintiff,**

v.

**SECRETARY OF the INTERIOR OF the UNITED STATES, June Ellen Ducheneaux Ledbetter, Lillian Lynn Ducheneaux, Ria Elaine Ducheneaux Seaboy, Orville Rolland Ducheneaux, Larry Douglas Ducheneaux, Deanna Ducheneaux Mulloy, Marlene Kay Ducheneaux, Allen Theodore Ducheneaux, Superintendent of Cheyenne River Agency, and U.S. Bureau of Indian Affairs, Defendants.**

**Civ. No. 85–5161.**

United States District Court,
D. South Dakota, W.D.

Oct. 24, 1986.

Newell E. Krause, Krause, Seiler & Cain, Mobridge, S.D., for plaintiff.

Krista Clark, Dakota Plains Legal Service, Eagle Butte, S.D., for defendants.

Lonnie Bryan, Asst. U.S. Atty., Rapid City, S.D., for defendant Secretary of the Interior.

## MEMORANDUM OPINION

BATTEY, District Judge.

This case is before the Court on a judicial review of the decision of the United States Department of the Interior, which denied Plaintiff her claimed interest by reason of her contribution during marriage in certain land held in trust by the government. Jurisdiction is conferred upon the Court by 5 U.S.C. § 706.

Individual defendants are nieces and nephews of Douglas Leonard Ducheneaux, deceased, husband of the Plaintiff. Defendant Secretary of the Interior of the United States is joined as an indispensable party since the property in question is held in trust under 25 U.S.C. § 465.

## FACTS

Marie Ducheneaux (wife) is the widow of Douglas Leonard Ducheneaux (husband). She is a non-Indian. He was an enrolled member of the Cheyenne River Sioux Tribe, who died testate on April 11, 1980, at the age of 65. At the time of his death the couple had been married for 32 years. During the last nine years the parties had been separated.

The couple was married on February 3, 1948. He was 34 and she was 41. She had about $4,000 in assets at the time of the marriage, including money in a bank account, furniture, and household appliances. The record shows the only property brought to the marriage by the husband was his allotment of 160 acres of trust land situated on the Cheyenne River Indian Reservation. Some of Plaintiff's money was used to purchase a store and gas station in Winner, South Dakota, which became the first business venture of the parties. For a time after the marriage the couple operated the store and gas station, but in the early 1950s they sold the business and moved to the Cheyenne River Indian Reservation. The parties started in the ranching business with the aid of the wife's contribution of money and her husband's contribution of 160 acres of trust land.

After the couple moved to the reservation they experienced the rigors of ranch and reservation life. They initially lived in a quonset building with no electricity or running water. The building was heated by a wood-burning stove. As was the case with most ranch couples, the wife kept house, gardened, and raised and sold some chickens. The proceeds from the sale of the store and gas station in Winner were used to buy livestock and for ranching expenses.

The wife remained on the reservation until the parties separated in 1971. The husband remained until his death. During the marriage five quarters of trust land were purchased from other Indian owners. This constitutes the property which is the subject of this action. These quarters were adjacent to the husband's original quarter section. The land purchased was

trust land and as it was purchased from time to time it was continued in trust by the United States government for Douglas Leonard Ducheneaux.[1] The land was placed in "trust status" in order to avoid the payment of state and local taxes. That this was the purpose of the trust arrangement is without dispute. Since the husband was Indian and property could only be held in trust for Indians, the Plaintiff was not recognized by the government as having any interest in the land.

Shortly after the parties separated the husband started divorce proceedings in the South Dakota Circuit Court on August 23, 1971. These proceedings were never completed, although the couple remained separated and apparently did not see one another after that date.

On March 20, 1972, the husband was ordered to pay $150 per month as temporary support to the wife. The divorce was not granted because a property settlement could not be reached and the state trial court felt that it did not have jurisdiction to divide or dispose of the reservation property (including trust status property) absent such agreement. Any division of the trust property would have to be approved by the Secretary of the Interior upon an application submitted by the husband as trust beneficiary. Since the husband would submit no application and the State Circuit Court felt it lacked jurisdiction, the matter languished up to the time of the husband's death.

When the state court refused to complete the divorce proceedings, the wife unsuccessfully attempted to seek partition of the land by an action in federal court in South Dakota.[2]

During the period of separation the court-ordered $150 monthly support payment was unilaterally discontinued by the husband, necessitating further nonsupport proceedings. The action was settled by the husband agreeing to reinstate the payments. The payments continued until the death of the husband.

A few months before his death, the husband executed a will which expressly disinherited Marie Ducheneaux and left his entire estate to the children of his half-brother, Allen Theodore Ducheneaux.[3] The seven individual beneficiaries are "Indians" under federal law.

### NATURE AND PROCEDURAL HISTORY

Subsequent to the husband's death the Plaintiff filed objections to the will. Hear-

---

**1.** The patents granted to the decedent stated in part:

> [P]ursuant to the Act of June 18, 1934, (48 St. 984), a trust patent issued to Douglas Leonard Ducheneaux, an Indian of the Cheyenne River Sioux Tribe, for the following described land:
> (Description of land)
> NOW KNOW YE, that the UNITED STATES OF AMERICA, in consideration of the premises, hereby declares that it does and will hold the land above described (subject to all statutory provisions and restrictions) for the period of twenty-five years, in trust for the sole use and benefit of the said Indian, and at the expiration of said period the United States will convey the same by patent to the said Indian in fee, discharged of said trust and free from all charge and encumbrance whatsoever; but in the event said Indian dies before the expiration of said trust period, the Secretary of the Interior shall ascertain the legal heirs of said Indian and either issue to them in their names the patent in fee for said land, or cause said land to be sold for the benefit of said heirs as provided by law.

**2.** This action, Civ. 72–3007, was commenced in the United States District Court for the District of South Dakota (Central Division). By a memorandum decision on November 21, 1972, District Judge Andrew W. Bogue held that the court did not have subject matter jurisdiction. The court stated that the complaint alleged neither "diversity of citizenship" nor "federal question." The court held that the right to a partition of the property was not based on a right granted by either the federal constitution or a federal statute. No appeal was taken from this judgment of dismissal.

**3.** The will dated January 24, 1980 (two and one-half months before the husband's death) provided with respect to his wife as follows:

> In thus making distribution of my property and the giving thereof as above mentioned, I am not unmindful of the fact that I am married to Marie Ann Ducheneaux, but we have been living separate and apart and it is my intention that said Marie Ann Ducheneaux shall not have any part of my estate whatsoever.

ings on the will were held on July 23, 1980, and October 29, 1980. On August 4, 1983, Garry V. Fisher, ALJ, issued his Order Approving Will and Decree of Distribution. The order upheld the will and distributed all of the trust property to the seven nieces and nephews equally.

The Plaintiff raised the issue now before this Court namely, that except for the original allotment, the trust real estate was acquired by the parties through their joint efforts and accordingly she is entitled to an equal share in the property.

The ALJ rejected this claim. The ALJ held that the Plaintiff, a non-Indian, could not claim a trust relationship with the United States and therefore could claim no interest in "trust" property which under the law is held for Indians only. The ALJ enumerated the factors which led to his conclusion as follows:

Several factors, considered duly proven in the record, lead to this conclusion. First, there is no trust relationship between the United States and Marie Ducheneaux. Whatever the motive for placing ownership of the purchased lands, the United States is not shown by the evidence to be a party to the transaction and there is no evidence of any consent by the government to hold any interest for the benefit of Marie Ducheneaux. If Marie permitted this situation to continue up to the death of the Testator, she is then the subject of a misplaced trust rather than any constructive or resulting trust. She has failed to produce any evidence that Testator undertook any obligation to her to preserve her interest in the properties. Secondly, the only word we have from the Testator is his written word in the will whereby he specifically disinherits his wife, Marie. This is actually evidence contrary to Marie's assertion that Testator had an understanding she owned an interest in the trust properties. If there were, he denied it by testamentary act. Thirdly, the law of the case is simple. *Tooahnippah v. Hickel*, 397 U.S. 598, (1970) clearly and unequivocally limits the authority of the Secretary of the Interior, where it is determined the testamentary act is voluntary, free from duress, undue influence or mistake. The Secretary must approve the will, though it be unfair or improvident, and may not substitute his judgment for that of the testator. Here the testator grants his trust estate to his nephews and nieces. Fourthly, the stipulation agreement establishing testator's obligation to pay support has the appearance at least of defining the relative positions of the parties to the marital separation. It is not considered here as definitive of all obligations of testator in his role as husband but since the separation was complete and permanent it was a significant time to assert whatever claim of right she had in the trust property. The claim of Marie Ducheneaux is denied.

The Plaintiff filed a petition for rehearing on September 16, 1983, which was denied by Keith L. Burrowes, ALJ, on October 3, 1983. She then appealed to the Interior Board of Indian Appeals (IBIA) on November 8, 1983.

On May 31, 1985, some 18 months later, the order of Administrative Law Judge Keith L. Burrowes was affirmed by Jerry Muskrat, Administrative Law Judge of the IBIA.

## DECISION BY THE INTERIOR BOARD OF INDIAN APPEALS

While the Plaintiff originally had contended that the state court order requiring the monthly payment of $150 constituted a continuing obligation of the estate, that position appears to have been abandoned after the issue was resolved against the Plaintiff. The ALJ found that there was no evidence that either the original 1972 order establishing payments nor the 1974 order dismissing the complaint for nonsupport contained any requirement that the payments should become an obligation of the husband's estate. Therefore, the ALJ held that the wife was not entitled to such payments from the estate.

The ALJ next considered the issue of whether the Plaintiff was entitled to a por-

tion of the trust property under the theory of a resulting trust by reason of her claim that the property was acquired by the joint efforts of both parties to the marriage. This was her contribution claim. The ALJ concluded that she could not claim a resulting purchase money trust in the Indian trust land because the federal government did not owe her any trust responsibility. This conclusion was based upon the concept of Indian trust status. The ALJ noted that the concept is intended for the benefit of Native Americans, although in some instances non-Indians may indirectly benefit from the special advantages of this form of property ownership. The ALJ held that the federal government does not owe a trust responsibility to Marie Ducheneaux and therefore cannot hold an interest in the land in trust for her.

## THE STANDARD OF REVIEW

This appeal is governed by the Administrative Procedure Act and the scope of review enunciated in 5 U.S.C. § 706. The statute provides in part:

### § 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

1. ...

2. hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise re-

viewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

## DEVELOPMENT OF THE INDIAN TRUST DOCTRINE

Statutes dealing with allotment of land to Indians are found at 25 U.S.C. § 461 *et seq.* The main statute is found at 25 U.S.C. § 465, which states in part:

The Secretary of the Interior is hereby authorized, in its discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments, whether the allottee be living or deceased for the purpose of providing land for Indians.

\* \* \* \* \* \*

Title to any lands ... shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and such land or rights shall be exempt from state and local taxation.

The original idea behind the allotment acts was that the Indian population would eventually be assimilated and that reservations would become extinct. *Montana v. United States,* 450 U.S. 544, 559, 101 S.Ct. 1245, 1255, 67 L.Ed.2d 943 (1981). It was also designed to foster the elimination of tribal relations. *Id.* It was felt that private land ownership by individual Indians would advance their assimilation and help make the Indians self-supporting members of society. *North Cheyenne Tribe v. Hollow Breast,* 425 U.S. 653, 96 S.Ct. 1793, 48 L.Ed.2d 274 (1976). In addition, it would relieve the federal government of the task of supervision of Indian affairs. *Id.* How-

ever, in recent years federal policy has shifted away from the vigorous attempt to assimilate Indian Tribes. *Nebraska v. Andrus,* 586 F.2d 1212 (8th Cir.1976).

Under the allotment system, the United States retains legal title to the allotted parcel, and the Indian's interest is recorded on a trust patent which usually reflects the language of the statute. *Id.* at 1218. (Citation omitted). The government, which has been called the historic guardian of Indian tribes, stands in a fiduciary relationship with the Indian tribes. *Id.* at 1222. The allottee's land is not subject to alienation by him except with consent of the government. 25 U.S.C. § 348.

The courts have stated that Indians are wards of the nation dependent upon the government's protection and good faith. *Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978). Allowing Indians to have land in trust allegedly helps the Indian to "develop the initiative destroyed by a century of oppression and paternalism." *Florida v. Department of Interior,* 768 F.2d 1248 (11th Cir.1985) [citations omitted]. *See also Mesqualero Apache Tribe v. Jones,* 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 115 (1973); *Cheyenne River Sioux Tribe v. Kleppe,* 424 F.Supp. 448, *rev'd on other grounds,* 566 F.2d 1085, *cert. denied* 439 U.S. 820, 99 S.Ct. 83, 58 L.Ed.2d 111 (1977).

## HUSBAND'S SUPPORT PAYMENTS

This Court takes no issue with the decision of the IBIA concerning the wife's claim that the husband's obligation to pay the monthly support payments of $150 survives his death. In South Dakota support payments required by the husband, unless expressly provided in the decree, do not survive the death of the husband. *Tyler v. Tyler,* 233 N.W.2d 804 (S.D.1975). Moreover, the payments in this case were temporary support payments required to be paid prior to a final adjudication of divorce and property rights.

## SPOUSAL CONTRIBUTION

It is axiomatic that a wife involved in a ranching or farming operation with her husband contributes just as much as her husband to the success of the operation, although often in a different manner. Cooking the meals and caring for the home contributes to the success of the operation as does plowing the ground or caring for the livestock. The Plaintiff did this and more. The evidence indicated she attended to some of the business matters, i.e., she attended to the parties' checking account. The time has long passed when such contributions of a wife toward the acquisition of marital assets is thought to be of little or no consequence. Such contributions have been often recognized in the matter of estate taxation under 26 U.S.C. § 2033 (I.R.C. 1954). *See also Craig v. United States,* 451 F.Supp. 378 (D.S.D.1978).

In *Craig,* Chief Judge Nichol of this Court held that a wife who pooled her capital and labors with her husband to conduct a family partnership farm, in essence, owned half of the farm materials. Mrs. Craig farmed with her husband for 43 years until his death. Her duties were to raise the children, keep the house, run an egg and butter business, tend to the hired help, help in the harvest, and other duties. In a dispute over estate taxes, the district court held that it could not:

ignore the reality of the wife's contribution to the family farm in this situation. To hold for the defendant here would also thwart the obvious intent of the Craigs, which was to operate the farm in partnership with each one contributing equally in the work and the control and management. The facts indicate that it was also agreed that the hard-earned rewards of that labor would be reinvested into the business rather than be kept by each spouse for his or her personal economic choices.... This court will not ignore this farm wife's contribution to the success of the business....

*Id.* at 382–83.

In a related vein, the case of *Conroy v. Frizzell,* 429 F.Supp. 918 (D.S.D.1977), affirmed 575 F.2d 175 (8th Cir.1978), held that where two Indians were divorced and

the trust land was in the husband's name, the wife had an enforceable property interest in the husband's land. This was so because the land had been acquired over a period of approximately 32 years by the parties' joint toil and efforts.

The IBIA decision provides, "Resulting money trusts in Indian land may not be claimed by persons to whom the federal government owes no trust responsibility." This Court finds no case or statutory authority supporting such a rule of law. Additionally, it misses the mark as outlined by the facts of this case. The right to claim the benefit of one's own property by way of a resulting trust or otherwise does not depend upon one's race.

The IBIA arrived at its conclusion even after conceding that " ... although such trusts have not been specifically addressed before, there appears to be no reason why they should not be recognized under appropriate circumstances." *Citing Estate of Jack R. Yellow Bird or Steele*, IP BI 600B80, IP BI 549C78.

The point that was missed by the Administrative Law Judge Muskrat is that the Plaintiff is not seeking to continue the land in trust status. She only seeks a property interest which is rightfully hers, obtained by years of contribution.

Additionally, while the deceased husband was permitted to disinherit his wife under the existing law of the state of South Dakota, he could do so only as to *his* own property interest. No South Dakota law exists which would permit the husband to disinherit his wife from her own property. His will would not affect his wife's property interest at all. Assuming that one concludes that the Plaintiff is indeed the owner of a property interest, what the husband does or does not say in his will as to this interest is of no consequence.

One cannot look to the contents of a husband's will disinheriting a wife to determine ownership as to the wife's property interest. This, however, is exactly what ALJ Fisher did when he said, "This [the act of disinheriting his wife] is actually evidence contrary to Marie's assertion that

Testator had an understanding she owned an interest in the trust properties. If there were, he denied it by testamentary act." This Court knows of no rule, nor did the ALJ cite any rule of law, which gives support to such a statement. If the Plaintiff owned an interest in the property, it was owned irrespective of what testator said in his will and that interest could not be defeated by his own self-serving statement.

The ALJ misses the mark also by concluding that "the United States is not shown by the evidence to be a party to the transaction and there is no evidence of any consent by the government to hold any interest for the benefit of Marie Ducheneaux." The point is, there need be no consent on the part of the United States. Indeed, the United States undoubtedly did not know the purpose for which the husband and wife placed the property in trust. Certainly it would not have permitted the property to be placed in the wife's name. The rule was, and still is, that property can only be held in trust status for "Indians." The Plaintiff being a "non-Indian" would not have been permitted such trust status. The fact of the government's knowledge then is completely irrelevant to the issue of ownership.

In any case of claimed contribution the substance of ownership is the issue controlling ownership. If one concedes there exists a theory of contribution, such theory is applied in those cases where the courts go behind the mere manner in which ownership is listed and look behind such ownership to determine actual ownership by the one claiming contribution. Accordingly, in any issue of contribution the theory of the wife's contribution may be asserted irrespective of actual facial ownership.

Finally, the ALJ based his decision in part on the fact that the Plaintiff "permitted this situation to continue up to the death of the Testator" and "she is then the subject of mis-placed trust rather than any constructive or resulting trust." This is a strained interpretation indeed. Of course she permitted the property to continue in trust. So did her husband. That was the

whole purpose of the trust arrangement—to receive the benefits of such trust relationship. If she "mis-placed" her trust as suggested by the ALJ, her penalty should not be the forfeiture of her property interest to the very person in whom the trust was placed.

The theory of allocating contribution in marital property is not an "intriguing theory" as suggested by Judge Fisher. It rests on the basic premise that a wife's contribution is equally as important as the husband's. He may not deprive her of her hard-earned share by assuming her contribution is nothing and thereby assert a right to pass it on to others.

The decision of the IBIA as it relates to the claim of the Plaintiff as to one-half of the trust property is contrary to law, unsupported by any substantial evidence, and is arbitrary and capricious.

### SUMMARY

By her efforts the wife contributed as much to the accumulated property as did her husband. She accordingly is entitled to the one-half interest which had been held in trust for him. The deceased husband may do as he wishes with respect to *his* property interest, but he cannot by his will alienate *her* property interest.

Accordingly, this matter is reversed, and the case remanded to the Secretary of the Interior to proceed in accordance with this memorandum.

The United States Department of Interior is directed to issue a deed of conveyance transferring all the right, title, and interest of an undivided one-half interest in the five quarters of real estate to the Plaintiff Marie Ducheneaux.

It shall be the further order of this Court that the United States Department of the Interior shall account to the Plaintiff for the rents and profits received from the undivided interest to which Marie Ducheneaux is entitled. Such rents and profits shall be determined from the date of death of Douglas Leonard Ducheneaux, and the amounts shall be paid to the Plaintiff Marie Ducheneaux. To the extent that any such rents and profits have been paid to the individually named defendants June Ellen Ducheneaux Ledbetter, Lillian Lynn Ducheneaux, Ria Elaine Ducheneaux Seaboy, Orville Rolland Ducheneaux, Larry Douglas Ducheneaux, Deanna Ducheneaux Mulloy, and Marlene Kay Ducheneaux, any future payments to them shall cease until the Plaintiff shall have recovered all amounts determined to be due hereunder.

This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law.