Winifred S. FEEZOR, et al., Plaintiffs,

v.

Bruce BABBITT, Secretary, Department
of the Interior, et al., Defendants.

Civil Action No. 96–1678 (JR).

United States District Court,
District of Columbia.

Dec. 20, 1996.

James H. Cohen, Law Offices of James H. Cohen, P.C., Minneapolis, MN, for Plaintiffs.

Silvia Sepulveda–Hambor, U.S. Department of Justice, Environmental & Natural Resources Division, General Litigation Section, Washington, DC, for Defendants.

Thomas Collier, Jr., Steptoe & Johnson, LLP, Washington, DC, for Amicus Curiae.

### MEMORANDUM

ROBERTSON, District Judge.

The Shakopee Mdewankanton Sioux Community operates a lucrative gaming enterprise in Prior Lake, Minnesota. The Community is divided by a dispute about how the proceeds of that enterprise are to be shared. In 1993, the Community enacted an ordinance providing for the adoption of new members. The effect of that ordinance was substantial dilution of each Community member's share of the gaming proceeds. In this action, some Community members challenge the Department of the Interior's approval of the adoption ordinance.

The government moves to dismiss, asserting that the Court lacks subject matter jurisdiction and that plaintiffs lack standing. In the alternative, the government moves for summary judgment upon the administrative record. Plaintiffs move for partial summary judgment. The facts material to the issues presented by these motions are not in dispute. For the reasons set forth in this memorandum, this matter will be remanded to the Department of Interior for further consideration.

### Facts

The Shakopee Mdewankanton Sioux Community was organized under the Indian Reorganization Act, 25 U.S.C. §§ 476–79, in 1969. A Community constitution was adopted at that time and amended in 1980.

On October 27, 1993, the Community enacted an ordinance adopting 165 individuals as new members of the tribe and establishing a process by which persons not qualified as

Community members by blood could petition for membership.[1]

Also on October 27, 1993, the tribe enacted an ordinance governing the distribution of the business proceeds of the Community's casino. This ordinance was needed to bring the tribe into compliance with the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701–21. The ordinance provided that casino proceeds would be distributed only to qualified constitutional members.

The Community Constitution expressly provides for adoption ordinances but makes them "subject to the approval of the Secretary of the Interior." (Art. II, Sec. 2). The October 27 ordinance was duly submitted to the Area Director, Minneapolis Office, Bureau of Indian Affairs, and it was disapproved.

On November 30, 1993, the General Council of the Community ("all persons qualified to vote in … Community elections," Art. III) enacted a second adoption ordinance that is the real subject of this case. The second adoption ordinance did not have an automatic enrollment provision but was otherwise similar to the first ordinance. The Area Director disapproved this ordinance as well, on December 13, 1993. The primary reason given for the disapproval was that the ordinance eliminated the ¼ blood requirement of the Community Constitution, and thus, absent a constitutional amendment, that it was unconstitutional.

The Community appealed the disapproval of the first and second adoption ordinances to the Interior Board of Indian Appeals. Other appeals were filed by individual members of the Community: plaintiffs Winifred Feezor et al. appealed from the Area Director's decision approving the business proceeds distribution ordinance; other Community members filed appeals challenging the Area Director's disapproval of both adoption ordinances. All appeals were consolidated before the IBIA. By order dated April 28, 1994, the IBIA ruled that individual Community members, including plaintiffs Feezor et al., lacked standing to challenge the Area Director's decisions.

On February 8, 1995, IBIA ruled on the Community's adoption ordinance appeals. IBIA dismissed as moot the appeal from the Area Director's ruling on the first ordinance but overruled the Area Director as to the second ordinance and remanded with instructions that it be approved. IBIA reasoned that the competing interpretations of the Community Constitution, one by the Area Director and the other by the Community, were both reasonable. In such a case, IBIA concluded, the Area Director and IBIA should defer to the tribe. Thereafter, in compliance with the IBIA ruling, the Area Director approved the second adoption ordinance.

The Area Director forwarded the ordinance and approval letter to Assistant Secretary Deer on March 2, 1995. On May 12, 1995, plaintiffs' counsel, acting on behalf of several Community members including plaintiffs Feezor et al., wrote to Secretary Babbitt urging revocation of the Area Director's approval of the ordinance. A few days later, by memorandum addressed to the Area Director, Assistant Secretary Deer concluded that the Area Director's approval was proper. Then, by letter to plaintiffs' counsel dated May 23, 1995, Assistant Secretary Deer declared that the IBIA decision was final and that an appeal lay only in district court. By letter dated June 19, 1996, Solicitor Leshy informed plaintiffs that Secretary Babbitt was declining to exercise his review power under 43 C.F.R. § 4.5(a)(2) (1995). This action was filed on July 18, 1996.

### Analysis

1. *Subject-matter jurisdiction*

Plaintiffs invoke this Court's jurisdiction under the Administrative Procedure Act, 5 U.S.C. §§ 551–559, 701–706; the Indian Reorganization Act, 25 U.S.C. §§ 476–79; and 28 U.S.C. § 1331. Defendants argue that neither the APA or the Indian Reorganization Act contains a grant of subject-matter jurisdiction and that plaintiffs' invocation of

1. The Community Constitution limited membership to persons of one-quarter Mdewankanton Sioux Indian blood (Art. II, Sec. 1).

28 U.S.C. § 1331 is misplaced because their claims do not arise under federal law.

■ In *Califano v. Sanders*, 430 U.S. 99, 106, 97 S.Ct. 980, 984–85, 51 L.Ed.2d 192 (1977), the Supreme Court recognized that the APA does not itself grant jurisdiction to the federal courts to review federal agency action but held that 28 U.S.C. § 1331, "subject only to preclusion-of-review statutes created by Congress, ... confer[s] subject-matter jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional prerequisite." *Id.*

The D.C. Circuit applied *Califano* in *Robbins v. Reagan*, 780 F.2d 37 (D.C.Cir.1985). Appellee's argument in that case, like the government's argument here, was that appellant's claims could not "arise under" federal law because there was "no federal law governing the decision" of the federal agency. *Id.* The court rejected that argument and held that "jurisdiction over APA challenges to federal agency action is vested in district court unless a preclusion of review statute specifically bars judicial review." *Id.* at 42; *see also Goodface v. Grassrope*, 708 F.2d 335 (8th Cir.1983) (approving the exercise of federal jurisdiction to review APA claims on facts similar to those presented here). The government has identified no statute that precludes judicial review of the IBIA and Department of Interior challenged actions in this case. The government's further argument of this point seizes upon three factors found in the *Robbins* decision as if they were a legal test. The argument is without merit. *Robbins* identifies those factors only as "additional support" for Professor Davis' view that "a district court always has jurisdiction to review federal administrative action under 28 U.S.C. § 1331...." 4 K. Davis, *Administrative Law Treatise* § 23.3 at 128–29 (2nd Ed.1983), *quoted in Robbins*, 780 F.2d at 43. Jurisdiction to review the challenged agency actions is conferred by 28 U.S.C. § 1331.

It is true, as defendants argue, that federal courts have been reluctant to assume jurisdiction over claims involving intra-tribal membership disputes or questions of interpretation of tribal constitutions. *See, e.g., Runs After v. United States*, 766 F.2d 347,

352 (8th Cir.1985); *Goodface, supra*, 708 F.2d at 339. In *Goodface*, however, the district court's error was not in reviewing BIA's actions under APA standards, but in going beyond judicial review to reach the merits of the tribal election dispute. This Court is mindful of the difference.

### 2. *Standing*

■ A plaintiff satisfies the constitutional requirements of standing if she can show (1) injury in fact that is (2) fairly traceable to the challenged action and (3) likely to be redressed by a favorable decision. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, —— U.S. ——, ——, 116 S.Ct. 1529, 1533, 134 L.Ed.2d 758 (1996). Plaintiffs in this case easily satisfy these requirements. The injury in fact requirement is met by plaintiffs' allegations that they were subjected to an unfair and arbitrary appeal process and that their voting rights and per capita shares have been diluted by the result of that process. Traceability is satisfied by the allegations that it was IBIA's decision to approve the adoption ordinance which led to the injury in fact. And redressability is shown by IBIA's power to disapprove the ordinance.

■ Constitutional standing is necessary but not sufficient. Plaintiffs must also satisfy the prudential standing requirement of falling within the so-called "zone of interests" encompassed by a statute. *See Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970). If their interests are "protected or regulated by the statute ... in question," they have standing. *Id.* This test is not intended to be demanding, *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 399–400, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987), and does not require an indication of a congressional purpose to benefit plaintiffs. *Id.* It is enough if plaintiffs' alleged injuries are injuries to interests protected by the statute in question. *See Mountain States Legal Foundation v. Glickman*, 92 F.3d 1228, 1235 (D.C.Cir.1996).

■ To support their standing, plaintiffs invoke the Indian Reorganization Act. That

statute, enacted in 1934, provided the authority and procedures for tribes to organize themselves and adopt tribal constitutions and bylaws. *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe,* 370 F.2d 529 (8th Cir.1967). The purpose of the act was to "encourage Indians to revitalize their self-government," *Cheyenne River Sioux Tribe v. Andrus,* 566 F.2d 1085, 1087 (8th Cir.1977) *cert. denied,* 439 U.S. 820, 99 S.Ct. 83, 58 L.Ed.2d 111 (1978), to "rehabilitate [their] economic life," *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 152, 93 S.Ct. 1267, 1272–73, 36 L.Ed.2d 114 (1973) (quoting H.R.Rep. No. 73–1804, at 6 (1934)), and to reverse government policy which had "destroyed Indian social and political institutions." Hearings on H.R. 7902 Before the House Comm. on Indian Affairs, 78 Cong. Rec. 11,729 (1934).

The authority of a tribe to adopt a constitution and bylaws was made subject to the authorization of the Secretary of Interior. 25 U.S.C. § 476; *see Kerr–McGee Corp. v. Navajo Tribe of Indians,* 471 U.S. 195, 198, 105 S.Ct. 1900, 1902–03, 85 L.Ed.2d 200 (1985); *Cheyenne River Sioux Tribe,* 566 F.2d at 1087 (noting that IRA places the Secretary in a regulatory position over these processes). The Act did not require secretarial approval of subsequent ordinances, *see Kerr–McGee,* 471 U.S. at 198, 105 S.Ct. at 1902–03, but the BIA, in assisting with the drafting of tribal constitutions, had a "policy of including provisions for Secretarial approval." *Id.; see also* AR–M, 27 IBIA at 170 (assuming that BIA encouraged the inclusion of the approval requirement in the Shakopee Community Constitution).

The interests of plaintiffs Feezor *et al.* coincide and are not inconsistent with the interests the IRA was designed to protect. Plaintiffs are members of a federally recognized tribe and are among the intended beneficiaries of the IRA. Furthermore, the IRA's express provision for secretarial approval of tribal constitutions and bylaws has been extended by BIA's policy of including

provisions for secretarial approval of subsequent ordinances in tribal constitutions.[2] When and if the approval procedure is unfair, the resultant injury is more than "marginally related" to the purposes of the statute.

### 3. *Merits of APA claim*

#### a. *Final agency action*

■ The APA limits nonstatutory judicial review to final agency actions. *See DRG Funding Corp. v. Secretary of Housing and Urban Dev.,* 76 F.3d 1212, 1213 (D.C.Cir. 1996) (citing 5 U.S.C. § 704). An agency decision becomes final after all administrative remedies are exhausted. *See Career Education, Inc. v. Department of Educ.,* 6 F.3d 817, 820 (D.C.Cir.1993).

Applicable Department of Interior regulations provide that IBIA "decides finally for the Department appeals [concerning] [a]dministrative actions of officials of the Bureau of Indian Affairs." 43 C.F.R. § 4.1(b)(2)(i) (1995). IBIA's ruling is accordingly final agency action subject to review under the APA. It is not necessary to decide whether the two subsequent challenged decisions are final agency actions.

#### b. *Review of IBIA decision*

Plaintiffs have raised a number of questions about the fairness of IBIA's decision that are not adequately answered on the existing record.

##### 1. *Parties participating in appeal*

■ IBIA's refusal to recognize plaintiffs' standing made the presentation of the Community's appeal essentially an *ex parte* process. The Community, *amicus curiae* in this court, explains that IBIA has consistently declined to accord standing to individual tribal members, *see Frease v. Sacramento Area Director,* 17 IBIA 250 (1989); *Stops v. Billings Area Director,* 23 IBIA 282 (1993). The argument is that this policy promotes tribal self-government and that it maintains the

---

**2.** Several federal courts have held that the IRA does not confer jurisdiction to consider claims of improper membership determinations or election procedures. *See Smith v. Babbitt,* 875 F.Supp. 1353, 1362–63 (D.Minn.1995), *aff'd,* 100 F.3d 556 (8th Cir.1996); *Boe v. Fort Belknap Indian Community,* 642 F.2d 276, 279 (9th Cir.1981). These cases have not involved standing issues, however.

proper government-to-government relationship between the United States and the tribe. The Court is sensitive to the federal government's long-standing policy of encouraging tribal self-government, *see Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 14, 107 S.Ct. 971, 975, 94 L.Ed.2d 10 (1987), and recognizes that this policy reflects the Indian tribes' retention of attributes of sovereignty over their members and territories. *Id.*

The arguments of *amicus* do not, however, answer the question of why plaintiffs were not afforded an opportunity to participate in the appeal process once an appeal was filed by a party with standing (the Community). The IBIA procedural regulations, 25 C.F.R. § 2.11(a) (1996), provide "interested parties" with an opportunity to "participate in an appeal proceeding" by filing an answer responding to the appellant's notice of appeal. An "interested party" is not a "party" in the sense of a party litigant, *cf. Brotherhood of Locomotive Eng'rs v. United States,* 101 F.3d 718, 722–23 (D.C.Cir.1996), but instead is defined by the regulation as "any person whose interests could be adversely affected by a decision in an appeal." 25 C.F.R. § 2.2 (1996).

IBIA recognizes that, if it chooses to exercise the approval power vested in it by a tribal constitution, it has the authority to disapprove membership and adoption ordinances which violate the Community Constitution. *See* AR–M, 27 IBIA at 172. Such a review can only be meaningful and fair if parties with interests or concerns contrary to the appellant are afforded an opportunity to participate in the appeal process.

### 2. *Timeliness of appeal*

Plaintiffs argue that IBIA had no jurisdiction to overrule the Area Director after March 1, 1994, because the ordinance was enacted on November 30, 1993, and Article V, Section 2 of the Constitution provides that "the Secretary of Interior may within 90 days from the date of [the ordinance's] enactment, rescind the action of the area director

for any cause." IBIA precedent has held that time limits in similar tribal constitutions are binding. *See, e.g., Zinke & Trumbo, LTD v. Phoenix Area Director,* 27 IBIA 105, 109 (1985) (Secretary may not approve ordinance outside time limits set by tribal constitution); *Pawnee Tribe of Oklahoma v. Anadarko Area Director,* 26 IBIA 282, 287 (1994).

It is undisputed that IBIA's decision overturning the Area Director's decision came approximately 15 months after the passage of the second adoption ordinance, but IBIA failed to address the question of timeliness or explain its failure.

### 3. *Manner of appeal*

Plaintiffs argue further that the Community's appeal to IBIA was not properly authorized: that it was made by the attorney for the Community without the majority vote by the General Council required by Article V, Section 2 of the Constitution.

It is undisputed that no General Council meeting took place between the time the ordinance was disapproved and the time the appeal was taken. Furthermore, since IBIA denied standing to individual appellants, it paid no attention to the manner in which the appeal was filed.

### 4. *Validity of the tribal ordinance*

Plaintiffs argue, finally, that IBIA lacked jurisdiction to consider the appeal because the amended adoption ordinance was not validly enacted under the Constitution. The assertion is that (1) the ordinance passed by only one vote; but (2) a November 11, 1993 voting list included five disenrolled members.[3] Defendants respond that the November 11, 1993 voting list was not part of the administrative record before IBIA and was not provided to the Department of the Interior until January of 1996, but, in view of defendants' position that individual members of the tribes had no standing, that argument is somewhat self-serving.

---

3. Plaintiffs make the additional argument that the adoption ordinance amounted to a constitutional amendment and therefore was subject to the requirements of passage of a majority vote with a thirty percent quorum. Regardless of

whether the adoption ordinance was in fact an ordinance or a constitutional amendment, the underlying challenge to the validity of the ordinance is the based on the same premise addressed here—the qualifications of the voters.

IBIA has explicitly acknowledged that it has the authority to interpret the Community's constitution in connection with its ordinance approval responsibilities. *See AR–M,* 27 IBIA at 172. The decision whether to approve a tribal ordinance presumably requires consideration of whether the ordinance was properly enacted under the Constitution—unless, as was the case here, IBIA refuses to entertain the question.

### 4. *Relief*

If an agency's decision, is not sustainable on the administrative record when subjected to this standard of review, the only appropriate relief is remand to the agency for further consideration. *See Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 1606–07, 84 L.Ed.2d 643 (1985); *Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Occidental Petroleum Corp. v. S.E.C.,* 873 F.2d 325, 337–38 (D.C.Cir.1989). There may be satisfactory answers to the question discussed above—how IBIA could exceed its 90–day time limit by a year, whether the Community's appeal was properly authorized, and whether the ordinance was in fact enacted by a proper majority vote—but those answers are not provided by the present record, which was established in an essentially *ex parte* proceeding. IBIA did explain its decision—as deference to the Community's interpretation of its Constitution where two interpretations appeared reasonable—but IBIA did not deal with the additional questions presented by the individual appellants because it did not recognize their standing. The accompanying order accordingly remands this matter to the Department of Interior for consideration and explanation.[4]

### ORDER

It is this 20th day of December, 1996,

**ORDERED** that plaintiff's motion for partial summary judgment [# 15] is **denied;** and it is

**FURTHER ORDERED** that defendants' motion to dismiss or, in the alternative, for

summary judgment [# 22] is **denied;** and it is

**FURTHER ORDERED** that this matter be remanded to the Department of Interior for further consideration consistent with the accompanying memorandum.

---

**4.** There is no need to address the question of the absence of the Community as an indispensable party, as defendants concede that the question arises only if the Court awards relief beyond remand to IBIA.