# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 20-5160**

**September Term, 2020**

FILED ON: APRIL 6, 2021

CHARLES K. HUDSON,
>                    APPELLEE

v.

DEBRA HAALAND, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE INTERIOR, ET AL.,
>                    APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-01988)

Before: SRINIVASAN, *Chief Judge*, MILLETT and KATSAS, *Circuit Judges*.

## J U D G M E N T

This case was considered on the record from the United States District Court for the District of Columbia, briefed and argued by counsel. We have accorded the issues full consideration and determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). It is

**ORDERED AND ADJUDGED** that the judgment of the United States District Court for the District of Columbia be **VACATED** and the case be **REMANDED FOR DISMISSAL**.

### I

Charles Hudson is a Native American and a member of the federally recognized Three Affiliated Tribes of the Fort Berthold Reservation ("Three Tribes") in North Dakota. The Indian Reorganization Act of 1934, 25 U.S.C. § 5101 *et seq.*, which applies to the Three Tribes, provides for self-government by tribes through the adoption of their own constitutions and bylaws, *id*. § 5123.

In 2013, Hudson voted in an election to determine whether the Three Tribes' Constitution should be amended (i) to expand the number of members of the Tribal Business Council, (ii) to

1

require the Business Council to vote on the removal of any member convicted of a felony, and (iii) to allow members of the Three Tribes to recall sitting members of the Business Council. Pursuant to the Reorganization Act, that election was conducted by the Secretary of the Interior in what is known as a "Secretarial election." *See* 25 U.S.C. § 5123. Importantly, Secretarial elections under the Reorganization Act "are federal—not tribal—elections," as the Reorganization Act "explicitly reserves to the federal government the power to hold and approve the elections that adopt or alter tribal constitutions." *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999).

After the proposed amendments passed, Hudson administratively challenged the Department of the Interior's decision to certify the election. Hudson alleged, in relevant part, that the Reorganization Act and the Three Tribes' Constitution each prohibit Interior from certifying elections unless 30 percent of all adult members of the Three Tribes vote. As only 5.5 percent of adult members voted in the election, Hudson contended that certification of the election violated the Act. Interior took the position that the 30 percent quorum requirement was satisfied because a quorum may be computed based on the (smaller) number of registered voters in the Three Tribes. For that reason, Interior denied Hudson's challenge and his subsequent administrative appeal.

Hudson sought judicial review in the United States District Court for the District of Columbia, alleging that Interior's decision was arbitrary, capricious, and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). The district court awarded summary judgment to Hudson on the ground that the Three Tribes' Constitution set the quorum requirement at 30 percent of all adult members of the Three Tribes. Interior filed a timely notice of appeal.

**II**

Because Hudson lacks standing to press his APA challenges, we cannot address the merits of his claims and must dismiss the appeal.

While no party raised standing as an issue in this court or in the district court, we have "an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). The "irreducible constitutional minimum of standing" is that (i) the plaintiff suffered an "injury in fact[,]" meaning "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (ii) the injury must be "fairly traceable to the challenged action of the defendant"; and (iii) a favorable decision by the court must be likely to redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992) (formatting modified); *see also Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018) (To present a justiciable claim for relief in federal court, a plaintiff must establish that "he has standing to do so, including that he has a personal stake in the outcome, distinct from a generally available grievance about government.") (formatting modified).

Hudson lacks standing because he has not suffered a cognizable injury-in-fact. He provides no explanation as to how the certification of the 2013 election harmed him in a concrete and particularized manner.

2

Hudson was not injured by the substantive changes effected by the constitutional amendments. Hudson is not a member of the Tribal Business Council and could not be injured by the new rules providing for the recall of its members or for their potential discharge from the Business Council after a felony conviction. *Cf. Carney v. Adams*, 141 S. Ct. 493, 499–501 (2020) (holding that Delaware lawyer who was interested in becoming a judge but not a registered member of any political party was not injured by State's requirement that courts be politically balanced because he failed to show that he was "'able and ready' to apply for a judgeship in the reasonably foreseeable future").

The expansion of the Tribal Business Council worked no harm to Hudson either. The Supreme Court has held that injuries may arise from apportionment decisions where the weight of one's vote is impaired relative to other citizens of the same polity. *See, e.g.*, *Baker v. Carr*, 369 U.S. 186, 207–208 (1962). But Hudson claims no such relative injury here. Under the 2013 amendment (as relevant here), the Business Council went from seven single-member districts to seven two-member districts. *See* J.A. 234. That transition equally affected the potency of Hudson's and every other member of the Three Tribes' vote. In other words, the power of Hudson's vote was the same as those cast by all other voters. *Cf. In re U.S. Catholic Conference*, 885 F.2d 1020, 1028 (2d Cir. 1989) ("[T]he wrong that plaintiffs sought to vindicate in *Baker v. Carr* and in those cases that construed it was the dilution of their vote relative to the vote of other citizens of the same state—a direct, cognizable injury."). An alleged vote dilution harm requires a "point of comparison." *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020). Yet Hudson suffered no loss of voting power from the expansion relative to the other members of the Three Tribes.

In any case, the expansion of the Business Council authorized by the ballot never went into effect because the original Council structure was soon restored by a constitutional amendment. *See* J.A. 365 (2016 election "largely restore[d] the pre-2013 status quo, especially respecting the number of Business Council members serving the Tribes."). So Hudson's claims as to the expansion in the size of the Business Council are also moot. *See* J.A. 95 (amended complaint seeking only declaratory and injunctive relief); *see also McBryde v. Committee to Review Circuit Council Conduct & Disability Orders of Judicial Conf. of U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001) ("If events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot.").

Nor has Hudson shown that the election process itself gave rise to a cognizable injury. The only injury asserted by Hudson is the supposed "diminishment of his vote" opposing the amendments. Oral Arg. Recording at 12:25–12:46. Hudson seems to mean that, if a larger quorum of voters were required, the amendments would have been harder to pass (and indeed would not have passed in 2013).

But that injury is shared by all those who voted against the amendments. It is a byproduct of the voting scheme; it is not an injury particularized to Hudson. *Cf. Wood*, 981 F.3d at 1314–1315 ("'[N]o single voter is specifically disadvantaged' if a vote is counted improperly, even if the error might have a 'mathematical impact on the final tally and thus on the proportional effect of every

3

vote.'  Vote dilution in this context is a 'paradigmatic generalized grievance that cannot support standing.'") (quoting *Bognet v. Secretary Commonwealth of Pa.*, 980 F.3d 336, 356–357 (3d Cir. 2020)).   In other words, this is not the sort of vote dilution theory that courts have found to support standing.  *See Wood*, 981 F.3d at 1314 ("[I]n the racial gerrymandering and malapportionment contexts, vote dilution occurs when voters are harmed compared to 'irrationally favored' voters from other districts.") (quoting *Baker*, 369 U.S. at 207–208).   The votes of all those who participated in the 2013 election weighed and were counted equally.

Hudson also argues that Interior's regulation allowing voters to challenge certification decisions, 25 C.F.R. § 81.22 (2012), conferred upon him a particularized injury.   Oral Arg. Recording at 11:10–11:39 (injury particularized because only "qualified voter[s]" may challenge certification).   But a regulation allowing individuals to pursue an *administrative* challenge says nothing about the existence of Article III standing to proceed in federal court.   *See Massachusetts v. EPA*, 549 U.S. 497, 516–517 (2007) (parties with procedural authorization to pursue challenge to agency action must still demonstrate injury-in-fact to establish standing in federal court); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (same).

In that regard, this case is altogether different from cases in which a plaintiff's ability to serve in office is diminished by an election, or her individual interests have otherwise been uniquely affected.  *See Rosales v. United States*, 477 F. Supp. 2d 119, 125–126 (D.D.C. 2007) (plaintiffs suffered an injury where referendum deprived them of the tribal offices they sought), *aff'd*, 275 F. App'x 1 (D.C. Cir. 2008); *Feezor v. Babbitt*, 953 F. Supp. 1, 4 (D.D.C. 1996) (members of a tribe had standing to challenge the tribe's enactment of an ordinance when "they were subjected to an unfair and arbitrary appeal process[,]" and "their voting rights and per capita shares have been diluted by the result of that process").   Hudson alleges no such personalized injury here.

At bottom, Hudson is asserting an interest in the proper administration of the law by the Secretary of the Interior.   But "a plaintiff cannot establish standing by asserting an abstract general interest common to all members of the public, no matter how sincere or deeply committed a plaintiff is to vindicating that general interest on behalf of the public[.]"   *Carney*, 141 S. Ct. at 499 (formatting modified); *see also Lance v. Coffman*, 549 U.S. 437, 442 (2007) (There is no standing where "[t]he only injury plaintiffs allege is that the law * * * has not been followed.").

Because Hudson lacks standing, and because mootness renders his claim as to the Business Council's expansion judicially unredressable in any event, we vacate the judgment of the district court and remand with instructions to dismiss the case.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41."

**FOR THE COURT:**
Mark J. Langer, Clerk

4

BY:     /s/
        Michael C. McGrail
        Deputy Clerk

5